# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RUDY QUIROZ,

    Plaintiff,

vs.                                                                                          No. CIV 14-1057 JB/WPL

CONOCOPHILLIPS COMPANY,

    Defendant.

## MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed November 16, 2015 (Doc. 36)("MSJ"). The Court held a hearing on September 26, 2016. The primary issues are: (i) whether a genuine dispute of material fact exists regarding Plaintiff Rudy Quiroz' claims for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, and under the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7(A)("NMHRA"), against Defendant ConocoPhillips Company; and (ii) whether Quiroz performed an act that public policy authorizes or encourages relating to his claim for wrongful termination-retaliatory discharge. The Court concludes that: (i) a genuine dispute of material fact exists regarding Quiroz' racial discrimination claims; and (ii) Quiroz did not perform an act that public policy authorizes or encourages, and, therefore, Quiroz' wrongful termination-retaliatory discharge claim fails. Accordingly, the Court grants the MSJ in part and denies it in part.

---

[1]The Court previously issued an Order that granted in part the Defendant's Motion for Summary Judgment, filed November 16, 2015 (Doc. 36). See Order at 1, filed September 27, 2016 (Doc. 55)("Order"). In that Order, the Court stated that it would "at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion and Amended Order is the promised opinion and includes an amended order granting in part and denying in part the Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

The Court draws the factual background from the parties' assertions of undisputed material fact in their summary judgment motion papers. See MSJ ¶¶ 1-75, at 2-15; Response of Plaintiff Rudy Quiroz to Defendant's Motion for Summary Judgment ¶¶ 1-75, at 1-19, filed December 8, 2015 (Doc. 41)("Response"); Defendant's Reply in Support of its Motion for Summary Judgment at 1-13, filed December 31, 2015 (Doc. 46)("Reply").

### 1. Quiroz' Employment with ConocoPhillips.

Quiroz began working for ConocoPhillips in 1986. See MSJ ¶ 1, at 2 (asserting this fact)(citing Oral Deposition of Rudy Quiroz at 45:10-13 (taken October 12, 2015)("Quiroz Depo.")); Response ¶ 1, at 1 (admitting this fact). During his employment, Quiroz received several promotions and held the position of Production Supervisor at the time ConocoPhillips terminated him. See MSJ ¶ 2, at 3 (asserting this fact)(citing Quiroz Depo. at 45:22-50:12); Response ¶ 2, at 1 (admitting this fact). As a Production Supervisor, Quiroz managed a group of employees who maintained well sites and a CO2 plant called the "Buckeye Operations" in southwest New Mexico. MSJ ¶ 3, at 3 (asserting this fact)(citing Quiroz Depo. at 54:11-56:22; id. at 68:16-24); Response ¶ 3, at 1 (not disputing this fact). A production supervisor "directs, coordinates and supervises all operational activities within his assigned area that are necessary to safely and efficiently produce and process the oil and gas streams while adhering to all company and governmental policies, guidelines and regulations." MSJ ¶ 3, at 3 (asserting this fact)(citing Quiroz Depo. at 54:11-56:22; id. at 68:16-24). See Response ¶ 3, at 1 (not disputing this fact). Quiroz' reporting responsibilities included "report[ing] the numbers to the environmental group who reported directly to Tommy Brooks. With respect to entries into IMPACT, the people responsible for making those entries are the [Health, Safety, and Environmental ("HSE") lead

employees], who at the time was John Gates."  Response ¶ 3, at 1 (asserting this fact)(alteration added)(citing Quiroz Depo. at 74:1-9). [2]

IMPACT is a reporting system that ConocoPhillips uses to track problems involving its facilities.  See MSJ ¶ 4, at 3 (asserting this fact)(citing Oral Deposition of Donald John Blair at 34:1-37:17 (taken October 13, 2015)("Blair Depo.")); Response ¶ 4, at 2 (admitting this fact). Health, Safety, and Environmental ("HSE") lead employees are responsible for supporting Production Supervisors like Quiroz, and his boss, Tommy Brooks, "all of whom can input any incidents into the IMPACT system."  MSJ ¶ 4, at 3 (asserting this fact)(citing Blair Depo. at 34:1-37:17).[3]  Quiroz "understood that IMPACT is the internal reporting mechanism to track all incidents."  MSJ ¶ 5, at 3 (asserting this fact)(citing Quiroz Depo. at 69:19-73:25); Response ¶ 5, at 2 (admitting this fact).  The HSE department reviewed the information entered into IMPACT and determined if an investigation was needed.  See Response ¶ 5, at 2 (asserting this fact)(citing

---

[2]ConocoPhillips purports to dispute this fact.  See MSJ ¶ 3, at 3; Response ¶ 3, at 1. According to ConocoPhillips, "Quiroz was also responsible for compliance with government regulations and corporate guidelines, reporting and IMPACT."  MSJ ¶ 3, at 3 (asserting this fact)(citing Quiroz Depo. at 54:11-56:22; id. at 68:16-24).  The cited portions of the Quiroz Deposition do not, however, support ConocoPhillips' assertion.  See Quiroz Depo. at 54:11-56:22; id. at 68:16-24.  Further, ConocoPhillips does not dispute Quiroz' asserted fact in its Reply.  The Court will therefore deem this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[3]Quiroz purports to dispute this fact, asserting that it was not his duty to report incidents into IMPACT and that only HSE lead employees could enter incidents into IMPACT.  See Response ¶ 4, at 2 (citing Quiroz Depo. at 74:1-9).  One "can," however, enter something into a computer system without having the "duty" to do so.  The Court will therefore deem this fact undisputed.  See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

Quiroz Depo. at 72:2-19).[4]  "On an issue such as a release in the Buckeye area, Quiroz would be responsible to provide closure or cleanup information to one of the HSE people."  See Response ¶ 4, at 2 (asserting this fact)(citing Blair Depo. at 37:2-17).[5]

Quiroz was the only Production Supervisor for the Buckeye area.  See Response ¶ 6, at 2 (asserting this fact)(citing Quiroz Depo. at 53:14-54:10).[6]  The employees that directly reported to Quiroz were Production Foreman Dennis Ross, Kenny Kidd, Plant Foreman Keith Price, HSE Leads John Gates and Jose Zapata, Production Specialist Steve Slater, and Mechanic Phillip Valencia.  See MSJ ¶ 6, at 3 (asserting this fact)(citing Quiroz Depo. at 53:17-21; id. at 56:23-59:5; id. at 61:3-7); Response ¶ 6, at 2 (admitting this fact).  All of these employees below Quiroz were on the same level in ConocoPhillips' corporate hierarchy.  See MSJ ¶ 6, at 4 (asserting this fact)(citing Quiroz Depo. at 53:17-21; id. at 56:23-59:5; id. at 61:3-7); Response

---

[4]ConocoPhillips purports to dispute this fact, asserting that a safety audit team reviewed the information in IMPACT.  See MSJ ¶ 5, at 3 (asserting this fact)(citing Quiroz Depo. at 69:19-73:25).  The cited portion of the Quiroz Deposition does not, however, mention a safety audit team.  See Quiroz Depo. at 69:19-73:25.  Further, ConocoPhillips does not address this fact in its Reply.  The Court will therefore deem this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

[5]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

[6]ConocoPhillips purports to dispute this fact, asserting that Quiroz supervised the Buckeye "plant."  MSJ ¶ 6, at 3 (asserting this fact)(citing Quiroz Depo. at 53:17-21; id. at 56:23-59:5; id. at 61:3-7).  The cited portion of the Quiroz Deposition does not, however, support ConocoPhillips assertion, because Quiroz states that he supervised "the Buckeye area," when asked if he supervised "Buckeye or the Buckeye plant."  Quiroz Depo. at 54:8-10.  Further, ConocoPhillips does not address this fact in its Reply.  The Court will therefore deem this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

¶ 6, at 2 (admitting this fact). Quiroz does not know the national origin, in contrast to race, of any of these employees, but he knows that Ross is African-American, that Kidd, Price, Gates, and Slater are Anglo, and that Zapata "looks" and Valencia "appears to be" Hispanic. MSJ ¶ 7, at 4 (asserting this fact)(citing Quiroz Depo. at 59:6-60:22); Response ¶ 7, at 2 (admitting this fact). Quiroz reported to Superintendent Tommy Brooks, who reported to Operations Manager Ty Maxey. See MSJ ¶ 8, at 4 (asserting this fact)(citing Quiroz Depo. at 50:13-53:13); Response ¶ 8, at 2 (admitting this fact). Vice President of the Mid Continent Business Unit William Patterson was Maxey's superior.[7]

"During his employment, Quiroz received two disciplinary actions." MSJ ¶ 9, at 4 (asserting this fact)(citing Quiroz Depo. at 76:4-86:15). See Response ¶ 9, at 3 (admitting this

---

[7]The parties purport to dispute to whom Maxey reported, see MSJ ¶ 8, at 4; Response ¶ 8, at 2, but the deposition pages that both parties cite do not support their respective assertions. According to ConocoPhillips, Maxey reported directly to William Patterson. See MSJ ¶ 8, at 4 (asserting this fact)(citing Quiroz Depo at 50:13-53:13). In the cited section of the Quiroz Deposition, when Quiroz was asked to whom Maxey reported, Quiroz responded "I can't remember for sure, but Gene True I think was his boss, but I'm not real sure if Gene True or Bill Patterson is who he reported directly to. Well, actually, I'm not . . . real sure about that." Quiroz Depo. at 52:19-23. Quiroz continued that Maxey would have reported to either True or Patterson. See Quiroz Depo. at 52:25; id. at 53:1-2. In other words ConocoPhillips' cited portion of the Quiroz Deposition shows that Quiroz does not know if Maxey reported to True or to Patterson. See Quiroz Depo. at 52:25; id. at 53:1-2.

According to Quiroz' Response, Maxey reported to Tom Bundy, who reported to Patterson. See Response ¶ 8, at 2 (asserting this fact)(citing Patterson Depo. at 5:22-6:7). The cited portion of the Patterson Deposition, however, only supports the assertion that Patterson was the Vice President of ConocoPhillips' Mid-Continent Business Unit; it does not mention Tom Bundy. See Patterson Depo. at 5:22-6:7. In sum, both parties do not provide support for their assertions, so the Court need not consider this a genuine factual dispute. See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . ."). It appears, however, that neither party disputes that Patterson was Maxey's superior, either directly or indirectly. The Court will therefore consider that fact undisputed. See MSJ ¶ 8, at 4; Response ¶ 8, at 2.

fact).  The first "related to his failure to properly supervise a contract employee."  MSJ ¶ 9, at 4

(asserting this fact)(citing Quiroz Depo. at 76:4-86:15).[8]  Quiroz was reprimanded for allowing a

contract employee to assist with philanthropic activities, but Larry Dean, the Project Manager at

the Buckeye facility, was not reprimanded, "even though he had four contractors on the

Philanthropic Committee."  Response ¶ 9, at 3 (asserting this fact)(citing Quiroz Depo. at 76:4-

86:15).[9]  Quiroz' second disciplinary action related to Quiroz stating that he likes coffee the way

he likes women, "black, hot and strong," a comment that a female African-American employee

overheard.  MSJ ¶ 9, at 4 (asserting this fact)(citing Quiroz Depo. at 76:4-86:15).[10]

    **2.**    **ConocoPhillips' Employment Policies and Procedures.**

"ConocoPhillips maintains an Equal Employment Opportunity Policy that Quiroz

received, read, and understood during his employment.  He also understood that he was an at-

will employee who could be terminated with or without cause at any time."  MSJ ¶ 10, at 4

(asserting this fact)(citing Quiroz Depo. at 87:8-88:16).  See Response ¶ 10, at 3 (admitting this

---

[8]Quiroz purports to dispute the substance of these disciplinary actions, stating "Quiroz disputes the allegations at issue in the two letters," without any explanation.  Response ¶ 9, at 3. Because Quiroz fails to explain specifically what he disputes, the Court will deem the details of the two disciplinary actions undisputed.  See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.")(emphasis added).

[9]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

[10]Quiroz purports to dispute the substance of these disciplinary actions, stating "Quiroz disputes the allegations at issue in the two letters," without any explanation.  Response ¶ 9, at 3. Because Quiroz fails to explain specifically what he disputes, the Court will deem the details of the two disciplinary actions undisputed.  See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.")(emphasis added).

fact).  The Equal Employment Opportunity Policy states in part:

> The Company will not participate in nor condone any unlawful discrimination of any kind.  This applies to, but is not limited to recruitment, advertising, hiring, training, promotion, transfer, demotion, layoff, termination, rate of pay or other forms of compensation, and all other aspects of employment.
>
> . . . .
>
> Retaliatory treatment of any employee reporting discrimination, harassment, or other prohibited behavior is strictly forbidden and should be reported immediately to his/her supervisor, manager or human resources representative, HR Manager, Advisor of Employee Relations, or the Ethics Hotline.

Response ¶ 10, at 3 (asserting this fact)(citing Equal Employment Opportunity Policy at 2-3 (dated September 1, 2013), filed December 8, 2015 (Doc. 41-14).[11]  This policy applied to all ConocoPhillips employees.  See Response ¶ 11, at 3 (asserting this fact)(citing Quiroz Depo. at 89:2-20).[12]

 "ConocoPhillips also maintains a Code of Business Ethics and Conduct . . . and Quiroz understood that if he failed to abide" by it, he could be disciplined or terminated.  MSJ ¶ 11, at 4-5 (asserting this fact)(citing Code of Business Ethics and Conduct at 10, filed November 16, 2015 (Doc. 36-12)("Code of Conduct")).  See Response ¶ 11, at 3 (admitting this fact).  The Code of Conduct states in part: "Supervisors have a special responsibility as leaders to act in a manner reflecting their position of trust and influence.  If you are a supervisor you must: act as a

---

[11]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[12]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

role model by demonstrating a commitment to ConocoPhillips' culture of integrity, compliance and ethics . . . ." MSJ ¶ 12, at 5 (asserting this fact)(quoting Code of Conduct at 10). <u>See</u> Response ¶ 12, at 3 (admitting this fact). The Code of Conduct also requires supervisors to "promptly report through appropriate channels all information received concerning any potential violation of company policy, regulations or the law." MSJ ¶ 12, at 5 (asserting this fact)(quoting Code of Conduct at 10). <u>See</u> Response ¶ 12, at 3 (admitting this fact). "Quiroz understood these requirements and annually certified that he was in compliance." MSJ ¶ 12, at 5 (asserting this fact)(citing Quiroz Depo. at 90:2-91:18). <u>See</u> Response ¶ 12, at 3 (admitting this fact). The Code of Conduct makes no distinction "between supervisory levels with respect to reporting violations of company policy, regulations, or the law. The Code states that disciplinary action, including termination, will result if an investigation reveals a violation of the Code of Conduct." MSJ ¶ 13, at 5 (asserting this fact)(citing Quiroz Depo. at 229:14-230:14; Code of Conduct at 10). <u>See</u> Response ¶ 13, at 4 (admitting this fact). The Code of Conduct further states: "'[R]eport and never ignore any known or suspected violations of our Code, policies, law or other requirements.'" MSJ ¶ 14, at 5 (asserting this fact)(quoting Code of Conduct at 6). <u>See</u> Response ¶ 14, at 4 (admitting this fact). The Code of Conduct explains how to report concerns:

> If you become aware of a situation that may involve a violation of our Code, Company policy, or the law, you have a responsibility to report it to one of the contacts listed here. Reporting actual or suspected misconduct allows our Company to investigate potential problems, stop actual misconduct and prevent future issues that could damage our reputation as an industry leader. To seek guidance or report a concern, you may contact any of the following resources: your supervisor or another manager you trust, your Human Resources representative, the Global Ethics Office within our Global Compliance & Ethics Organization, The ConcoPhillips Ethics HelpLine. You may also choose to report anonymously where local law allows by contacting The Ethics HelpLine.

MSJ ¶ 14, at 5 (asserting this fact)(quoting Code of Conduct at 8). <u>See</u> Response ¶ 14, at 4

(admitting this fact). The Code of Conduct "'prohibits retaliation of any kind against employees for raising an ethical or legal concern or for participating in any investigation in good faith. . . . If you feel you or someone else is being retaliated against, report the situation immediately.'" MSJ ¶ 15, at 5-6 (asserting this fact)(quoting Code of Conduct at 9). <u>See</u> Response ¶ 15, at 4 (admitting this fact). It further states: "'[Y]ou will never face retaliation at ConocoPhillips for asking questions or raising concerns in good faith,'" and an employee can contact his or her "'supervisor or another manager you trust,'" to report suspected misconduct. Response ¶ 12, at 3-4 (asserting this fact)(quoting Code of Conduct at 4, 8).[13] During his employment at ConocoPhillips, Quiroz never reported that anyone discriminated or retaliated against him. <u>See</u> MSJ ¶ 16, at 6 (asserting this fact)(citing Quiroz Depo. at 93:3-94:6; <u>id.</u> at 200:5-19); Response ¶ 16, at 4 (admitting this fact). When Quiroz was terminated, however, he thought that ConocoPhillips was retaliating against him, because he had reported five HSE-related incidents. <u>See</u> Response ¶ 16, at 4 (asserting this fact)(citing Quiroz Depo. at 93:18-94:6).[14]

**3.     <u>The Ethics Investigation Regarding the HSE-Related Incidents</u>.**

In March, 2013, Robert Dobbs, a subcontract employee of ConocoPhillips, notified ConocoPhillips HSE manager Donald Blair that an oil rig called the Philmex Battery #3 had caught fire, which Dobbs believed was not reported in accordance with ConocoPhillips policy.

---

[13]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[14]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

See MSJ ¶ 17, at 6 (asserting this fact)(citing Report of Investigation at 4 (dated June 25, 2013),

filed November 16, 2015 (Doc. 36-13)("Investigation Report")). See Response ¶ 17, at 4

(admitting this fact). "Dobbs stated that he was concerned about the safety culture" at the

ConocoPhillips Southeast New Mexico Production Office. MSJ ¶ 17, at 6 (asserting this

fact)(citing Investigation Report at 4). See Response ¶ 17, at 4 (admitting this fact). Dobbs

learned that another employee had also reported the fire to Larry Deen, the Surface Project

Supervisor for the Buckeye facility. See Response ¶ 17, at 4 (asserting this fact)(citing Oral

Deposition of Robert Alan Dobbs at 20:17-21:1, 23:13-21 (taken October 13, 2015)("Dobbs

Depo.")).[15] Dobbs became more concerned about safety when Brooks conducted a meeting on

safety issues, but "omitted critical comments from a safety audit at the Buckeye Plant."

Response ¶ 17, at 4 (asserting this fact)(citing Memorandum of Investigative Activity at 2-4,

filed December 8, 2015 (Doc. 41-21)("Investigative Memo")).[16] Dobbs contacted Blair after

learning that Brooks knew about the fire, though he never spoke with Quiroz about it. Response

¶ 17, at 5 (asserting this fact)(citing Dobbs Depo. at 40:20-41:1).[17] Dobbs is now employed as a

surface project lead supervisor with ConocoPhillips. See Response ¶ 17, at 5 (asserting this

---

[15]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[16]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[17]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

fact)(citing Dobbs Depo. at 5:21-7:2).[18]

After Dobbs spoke with Blair, Blair contacted Patterson about Dobbs' Philmex Battery Fire report.  See Response ¶ 18, at 5 (asserting this fact)(citing Patterson Depo. at 26:25-27:13).[19] On April 2, 2013, after Dobbs' report, Quiroz met with Patterson and told him about five HSE-related incidents, including the Philmex fire.  See MSJ ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9; id. at 105:14-106:6; id. at 110:1-10; Oral Deposition of William Patterson at 21:11-15 (taken November 4, 2015)("Patterson Depo."); Response ¶ 19, at 5 (admitting this fact).  When Quiroz spoke to Patterson, Quiroz knew that Dobbs had already reported the Philmex Battery fire.  See MSJ ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at

_____

[18]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[19]ConocoPhillips purports to dispute this fact.  According to ConocoPhillips, "Blair informed Maxey of Dobbs' report.  Maxey then instructed ConocoPhillips' Ethics Office to begin an internal investigation."  MSJ ¶ 18, at 6 (citing Investigation Report at 4).  Page four of the Investigation Report does not, however, support ConocoPhillips' assertion.  The cited page states only that "Maxey . . . notified the ConocoPhillips . . . ethics office that his department developed information that several [HSE] related incidents occurred . . . and that employees may have been directed by a senior manager of the production office to either not report or under report the incidents."  Investigation Report at 4.  It does not say that Blair informed Maxey of Dobb's report, nor does it say that Maxey instructed the ethics office to begin an investigation.  The Court will therefore not consider this asserted fact.  See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . .").

According to Quiroz, "Blair contacted William Patterson about [Dobbs'] allegation concerning the Philmex Battery Fire."  Response ¶ 18, at 5 (alteration added)(citing Patterson Depo. at 26:25-27:13).  The cited pages of the Patterson Deposition support Quiroz' asserted fact.  See Patterson Depo. at 27:1-6.  Because the cited deposition supports Quiroz' asserted fact, and because ConocoPhillips does not specifically controvert this fact in its Reply, the Court will consider this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

97:5-100:9 id. at 105:14-106:6 id. at 110:1-10; Patterson Depo. at 21:11-15; Investigation Report at 4).[20] Quiroz told Patterson that Brooks directed him and other employees at the Buckeye Plant not to report or to under-report the five HSE incidents. See MSJ ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9; id. at 105:14-106:6; id. at 110:1-10; Patterson Depo. at 21:11-15; Investigation Report at 4).[21] Before April 2, 2013, Quiroz had not reported any of the five incidents to the Ethics Office, even though he knew of those incidents when they occurred. See MSJ ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9; id. at 105:14-106:6 id. at 110:1-10; Patterson Depo. at 21:11-15; Investigation Report at 4).[22] Quiroz knew about the Philmex Battery fire the day after it occurred, but he did not report it until his April 2, 2013, meeting with Patterson. See MSJ ¶ 20, at 6 (asserting this fact)(citing Quiroz Depo. at 100:10-

---

[20]Quiroz purports to dispute this fact, saying that "Quiroz was aware that Dobbs had reported the Philmex Battery Fire, but Dobbs reported only after it was known, Quiroz was gathering information to come forward." Response ¶ 19, at 6 (citing Quiroz Depo 97:5-100:9). The reasoning for Quiroz' delay in reporting the fire, however, does not controvert the fact that Quiroz knew that Dobbs had already reported the fire. The Court will therefore deem ConocoPhillips' asserted fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[21]Quiroz purports to dispute this fact, asserting that "the balance of [fact] nineteen is disputed," and then discussing additional details about Quiroz' delay in reporting the fire, but nowhere mentioning Brooks. Response ¶ 19, at 5-6. The Court will therefore deem ConocoPhillips' asserted fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[22]Quiroz purports to dispute this fact, asserting that Quiroz was present for only one of the five incidents. Response ¶ 19, at 6 (asserting this fact)(citing Bostic Memo at 1-5). One can be absent from an event, however, and still know that it occurred. The Court will therefore deem ConocoPhillips' asserted fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

103:6); Response ¶ 20, at 6 (admitting this fact). Quiroz waited to report the fire, because he was gathering information about the other four incidents so that he could tell Patterson about all of them, although he did not take any documents or information to the April 2, 2013, meeting with Patterson. See MSJ ¶ 20, at 6-7 (asserting this fact)(citing Quiroz Depo. at 100:10-103:6); Response ¶ 20, at 6 (admitting this fact). The documents, however, "were turned over to [John] Bostic on April 4, 2013." Response ¶ 20, at 6 (asserting this fact)(citing Report of Investigation at 9-10 (dated June 25, 2013), filed November 16, 2015 (Doc. 36-14)("Investigation Report Part 2")).[23]

Quiroz knew that Dobbs had reported the fire, but "Quiroz was gathering information to come forward." Response ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9).[24] Quiroz began to accumulate information about the fire, including a report from Price, before Dobbs' report. See Response ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9).[25] Of the five HSE incidents, Quiroz was present for only one, the fourth incident, involving a water spill, and the incident was reported into IMPACT. See Response ¶ 19, at 6 (asserting this

---

[23]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[24]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[25]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

fact)(citing Memorandum of Investigative Activity at 1-5 (dated April 4, 2013), filed November 16, 2015 (Doc. 36-15)("Bostic Memo")).[26]

Patterson believed that Quiroz spoke with him on April 2, 2013, because Quiroz had heard about the Philmex Battery fire investigation and "wanted to get ahead of it."[27] MSJ ¶ 21, at 7 (citing Patterson Depo. at 101:6-102:14)(asserting this fact).[28] Proper procedure was to report the fire the day that it occurred, but Brooks did not report it, and Quiroz did not inform Maxey, Patterson, or the Ethics Office of Brooks' inaction. See MSJ ¶ 22, at 7 (citing Quiroz Depo. at 103:7-17).[29] Quiroz did not, however, "have any of the facts on the fire" the day it

---

[26]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[27]Quiroz admits that Patterson believed that Quiroz heard about the Philmex Battery fire investigation. See Response ¶ 21, at 6 (admitting this fact). Quiroz purports to dispute that Patterson believed Quiroz spoke with him to get ahead of the investigation, saying "evidence turned over to the investigation team revealed Quiroz had started to obtain information to turn in on or before March 19, 2013." Response ¶ 21, at 6-7 (citing Investigation Report Part 2 at 9-10). The fact that such evidence was given to the investigative team does not, however, controvert what Patterson believed. The Court will therefore deem ConocoPhillips' asserted fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[28]ConocoPhillips alleges that Patterson "holds that opinion because Quiroz waited two years before speaking to Patterson about the five HSE-related incidents." MSJ ¶ 21, at 7 (citing Patterson Depo. 101:6-102:14). The cited portion of the Patterson deposition does not, however, support this assertion. See Patterson Depo. 101:6-102:14. The Court will therefore not consider this fact. See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . .").

[29]Quiroz purports to dispute this fact, alleging that he "did not even have any of the facts on the fire on that day." Response ¶ 22, at 7 (asserting this fact)(citing Quiroz Depo. at 103:17-24). Although this may have been the reason for Quiroz' inaction, it does not controvert ConocoPhillips' asserted fact. The Court will therefore deem ConocoPhillips' asserted fact

occurred, but he reported it, as well as Brooks' instruction not to report it, to Patterson and Blair at their April 2, 2013 meeting, and also to Dobbs two days later. Response ¶ 22, at 7 (asserting this fact)(citing Quroz Depo. at 103:17-24).[30]

After Patterson met with Quiroz, he asked Maxey to investigate. See MSJ ¶ 23, at 7 (asserting this fact)(citing Patterson Depo. at 24:3-10; id. at 25:5-27:18); Response ¶ 23, at 7 (not disputing this fact). Maxey determined that the fire was not reported in IMPACT, but that the fire department was dispatched to the facility. See MSJ ¶ 23, at 7 (asserting this fact)(citing Patterson Depo. at 24:3-10; id. at 25:5-27:18); Response ¶ 23, at 7 (not disputing this fact). Patterson therefore told Maxey to report the situation to the Ethics Office for investigation. See MSJ ¶ 23, at 7 (asserting this fact)(citing Patterson Depo. at 24:3-10; id. at 25:5-27:18); Response ¶ 23, at 7 (not disputing this fact).[31]

---

undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[30]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[31]Although Quiroz asserts "that is not as the time line is set forth in the Report of Investigation," he also states that "fact-twenty three," referencing ConocoPhillips' timeline of events from the end of Patterson's meeting with Quiroz to the beginning of the investigation, "is not disputed." Response ¶ 23, at 7. The Court will therefore deem ConocoPhillips' timeline of events from the end of Patterson's meeting with Quiroz to the beginning of the investigation undisputed.

The Court also notes that the Investigation Report states that Maxey called the ethics office on April 2, 2013, and that Quiroz met with Patterson "on/about April 3, 2013," Investigation Report at 4. The phrase "on/about" indicates that Quiroz may have met with Patterson before Maxey called the ethics office, so the Investigation Report could be consistent with ConocoPhilips' version of events. In any event, Quiroz has stated that "the portion of fact nineteen which states that Quiroz met with Patterson on April 2, 2013 and reported the five

An investigative team consisting of John Bostic, Michael Balentine, Ken Michaelis, and Gary Steger "conducted 22 interviews of managers, supervisors, employees and contract personnel as well as reviewed policies, procedures, and documents associated with the allegations." MSJ ¶ 24, at 7 (asserting this fact)(citing Investigation Report at 4-7); Response ¶ 24, at 7 (not disputing this fact).[32] On April 4, 2013, Bostic interviewed Quiroz, who detailed the five HSE-related incidents, and alleged that Brooks instructed him and other employees not to report, or to under-report, the incidents. See MSJ ¶ 25, at 7-8 (asserting this fact)(citing Quiroz Depo. at 105:9-13; Investigation Report at 4); Response ¶ 25, at 7 (admitting this fact). Bostic summarized this interview in a written memorandum. See MSJ ¶ 26, at 8 (asserting this fact)(citing Quiroz Depo. at 108:5-109:22; Bostic Memo at 2-5); Response ¶ 26, at 7 (not disputing this fact). Quiroz testified that the Bostic Memo is accurate and does not contain any false information. MSJ ¶ 26, at 8 (asserting this fact)(citing Quiroz Depo. at 108:5-109:22).[33] Quiroz also testified, however, that the stated basis for the investigation listed in the Bostic Memo is inaccurate. See Response ¶ 26, at 7 (asserting this fact)(citing Quiroz Depo. at 108:5-

---

incidents is not disputed." Response ¶ 19, at 5. It is therefore entirely plausible that Quiroz met with Patterson, on April 2, 2013, and Maxey called the ethics office later that same day.

[32]Quiroz states that this fact "is not disputed, but it appears incomplete," with no elaboration or citation. Response ¶ 24, at 7. The Court will therefore deem this fact undisputed. See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . .").

[33]Quiroz does not specifically controvert the fact that he testified that the Bostic Memo was not false, although he points to additional testimony in the same deposition contending that parts of the Bostic Memo are inaccurate. See Response ¶ 26, at 7 (citing Quiroz Depo. at 108:5-15; id. at 108:16-25).

15).[34] Specifically, the Bostic Memo states that the basis for the investigation was that Maxey reported that several HSE incidents occurred, but that employees were directed not to report, or under-report them. See Bostic Memo at 1. Quiroz contends that the basis for the investigation was the information that he, and not Maxey, gave to Patterson and Blair. See Response ¶ 26, at 7 (citing Quiroz. Depo. at 108:5-15).[35] Quiroz also did not witness the Philmex Battery fire. See Response ¶ 26, at 7 (asserting this fact)(citing Quiroz Depo. at 108:16-25).[36]

Quiroz knew that, after he spoke to Patterson and Bostic, the Ethics Office would investigate his allegations. See MSJ ¶ 27, at 8 (asserting this fact)(citing Quiroz Depo. at 188:2-22); Response ¶ 27, at 7 (not disputing this fact). Quiroz "believed ConocoPhillips investigated all of his claims." MSJ ¶ 27, at 8 (asserting this fact)(citing Quiroz Depo. at 188:2-22). See Response ¶ 27, at 7 (not disputing this fact).[37] Quiroz also believes, however, that the

---

[34]ConocoPhillips does not specifically controvert this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[35]ConocoPhillips does not specifically controvert this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[36]ConocoPhillips does not specifically controvert this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[37]Quiroz purports to dispute this fact, arguing that "Quiroz believes the investigation failed to gather all the details concerning each incident and that the actions of some supervisors, who had knowledge of the incidents were omitted from the [Investigation Report]." Response ¶ 27, at 7 (citing Quiroz Depo. at 188:23-189:7). The fact that Quiroz believes that the investigation did not gather all of the details of his claims, does not, however, controvert Quiroz' testimony that he believed ConocoPhillips investigated all of his claims. One can investigate

investigation did not gather all of the details regarding each HSE incident, "and that the actions of some supervisors, who had knowledge of the incidents were omitted from the Report." Response ¶ 27, at 7 (citing Quiroz Depo. at 188:23-189:7).[38]

"[T]he investigation process is a separate operational activity to maintain independence so that [Patterson] could later make decisions as a result of what was discovered." MSJ ¶ 28, at 8 (asserting this fact)(citing Patterson Depo. at 22:5-18; id. at 40:7-24); Response ¶ 28, at 7-8 (not disputing this fact). Patterson, however, requested that Blair, the HSE manager under him, be included in the investigation. See Response ¶ 28, at 8 (asserting this fact)(citing Investigation Report Part 2 at 9; Patterson Depo. at 27:7-18).[39] Brooks was placed on paid administrative leave during the investigation so that he could not interfere with it.[40] See MSJ ¶ 29, at 8 (asserting this fact)(citing Patterson Depo. at 43:21-44:25); Response ¶ 29, at 8 (not disputing this fact).

---

every claim without going into adequate detail regarding all of the claims. The Court will therefore deem MSJ ¶ 27, at 8 undisputed.

[38]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[39]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[40]The parties dispute whether Quiroz was placed on paid administrative leave during the investigation; ConocoPhillips contends that he was, see MSJ ¶ 29, at 8 (asserting this fact)(citing Patterson Depo. at 43:21-44:25), and Quiroz contends that he was not, see Response ¶ 29, at 9 (disputing this fact)(citing Quiroz Depo. at 144:20).

4.      **The Investigation's Findings Regarding the Five Incidents**.

The investigation covered five HSE-related incidents: The first, the Philmex Battery fire, occurred on March 15, 2013; the second, the compressor fire, occurred on February 25, 2013; the third, the line crack, occurred on September 30, 2012; the fourth, the water spill, occurred on January 27, 2012; and the fifth, the valve cap rupture, occurred on September 7, 2011.  See Response ¶ 21, at 6 (asserting this fact)(citing Investigation Report at 5).[41]

Quiroz learned about the Philmex Battery fire, the first incident, on March 15, 2013, the same day it occurred, from his subordinate, Ross.  See MSJ ¶ 30, at 8 (asserting this fact)(citing Quiroz Depo. at 110:11-111:16); Response ¶ 30, at 8 (not disputing this fact).  When Quiroz learned of the fire, he did not report it in IMPACT or to the Safety Audit Committee.  See MSJ ¶ 30, at 8 (asserting this fact)(citing Quiroz Depo. at 110:11-111:16); Response ¶ 30, at 8 (not disputing this fact).  Quiroz confirmed, however, that the fire had been reported to Brooks.  See Response ¶ 30, at 8 (asserting this fact)(citing Quiroz Depo. at 110:11-112:12).[42]  The Investigation Report's key findings regarding the Philmex Battery fire do not mention Quiroz.  See Response ¶ 30, at 8 (asserting this fact)(citing Investigation Report at 9-10; Investigation

_____

[41]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[42]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Report Part 2 at 1-10).[43]

Three days later, on March 18, 2013, Quiroz learned that Brooks "had not properly reported the fire because it did not show up in IMPACT by that date. Quiroz did not, however, report the incident in IMPACT or to the Safety Audit Committee." MSJ ¶ 31, at 9 (asserting this fact)(citing Quiroz Depo. at 111:17-113:4; id. at 114:7-18). See Response ¶ 31, at 8-9 (not disputing this fact). The first time that Quiroz reported the Philmex Battery fire was during his April 2, 2013, meeting with Patterson. MSJ ¶ 32, at 9 (asserting this fact)(citing Quiroz Depo. at 114:7-12); Response ¶ 32, at 9 (admitting this fact). Quiroz had started to obtain information about the HSE incidents, however, before the April 2, 2013, meeting. See Response ¶ 31, at 8-9 (asserting this fact)(citing Investigation Report Part 2 at 10).[44]

The second incident involves a plant compressor fire. See MSJ ¶ 33, at 9 (asserting this fact)(citing Quiroz Depo. at 116:20-117:7; Bostic Memo at 2-5); Response ¶ 33, at 9 (admitting this fact). Quiroz learned about this fire from his subordinate, Price. See MSJ ¶ 33, at 9 (asserting this fact)(citing Quiroz Depo. at 116:20-117:7; Bostic Memo at 2-5); Response ¶ 33, at 9 (admitting this fact). Quiroz called Brooks to inform him of the fire and told another subordinate, Gates, "to go to the plant to investigate the situation." MSJ ¶ 33, at 9 (asserting this fact)(citing Quiroz Depo. at 116:20-117:7; Bostic Memo at 2-5). See Response ¶ 33, at 9

---

[43]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[44]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

(admitting this fact). Brooks told Quiroz that they would have to clean up the fire damage "and not say a word about the incident because the Safety Audit Team was on-site and they [did] not need more exposure." MSJ ¶ 34, at 9 (asserting this fact)(citing Quiroz Depo. at 117:16-118:7; Bostic Memo at 2-5). See Response ¶ 34, at 9 (admitting this fact). Quiroz then called Price and told him not to report the fire. See MSJ ¶ 34, at 9 (asserting this fact)(citing Quiroz Depo. at 117:16-118:7; Bostic Memo at 2-5); Response ¶ 34, at 9 (admitting this fact). Quiroz also told Price to "get the machine up and running." MSJ ¶ 35, at 9 (asserting this fact)(citing Quiroz Depo. at 119:7-17; id. at 120:23). See Response ¶ 35, at 9 (not disputing this fact). In the ConocoPhillips hierarchy, Price directly reported to Quiroz. See MSJ ¶ 35, at 9 (asserting this fact)(citing Quiroz Depo. at 119:7-17; id. at 120:23); Response ¶ 35, at 9 (not disputing this fact). Quiroz did not instruct Price to enter the incident in IMPACT, because that was Gates' responsibility, and not Quiroz' or Price's job. See Response ¶ 35, at 9 (asserting this fact)(citing Quiroz Depo. at 19:7-18; id. at 120:1-13).[45]

Quiroz does not know if anyone else operating the plant at which the fire occurred was instructed not to report the fire, and he "did not speak to any of them about the incident." MSJ

---

[45]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Quiroz also asserts that Price was the Buckeye Plant supervisor and had the same duty to report as Quiroz did. See Response ¶ 35, at 9 (asserting this fact)(citing Quiroz Depo. at 19:7-18). The cited page of the Quiroz Deposition does not, however, support that assertion. The cited page discusses Quiroz' divorce, and not Price's duty to report incidents. See Quiroz Depo. at 19:1-25. Because the cited deposition page does not support the asserted fact, and because Price and Quiroz' duty to report is a key fact in this case, the Court will not consider this asserted fact based on this evidence. See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . .").

¶ 36, at 9 (asserting this fact)(citing Quiroz Depo. at 120:24-121:22). <u>See</u> Response ¶ 36, at 9 (not disputing this fact). The Investigation Report found, however, that Price had written the words "gas leak" in his report, and that Price had instructed two other employees to delete references to a fire from an operator log. <u>See</u> Response ¶ 36, at 9 (asserting this fact)(citing Investigation Report Part 2 at 2).[46] Brooks eventually admitted that he had instructed Quiroz not to report the incident. <u>See</u> Response ¶ 36, at 9 (asserting this fact)(citing Investigation Report Part 2 at 2).[47]

Quiroz knew that Brooks' instruction not to report the compressor fire was contrary to ConocoPhillips' policy, but Quiroz did not report Brooks' violation until Quiroz' April 2, 2013, meeting with Patterson. <u>See</u> MSJ ¶ 37, at 9 (asserting this fact)(citing Quiroz Depo. at 118:8-25); Response ¶ 37, at 9 (not disputing this fact). Quiroz waited until April 2, 2013, to report Brooks' policy violation so that Quiroz could gather information about the incident. <u>See</u> Response ¶ 37, at 9 (asserting this fact)(citing Quiroz Depo. at 118:15-22).[48] Quiroz never reported the compressor fire in IMPACT or to the Safety Audit Team, and did not report it until

---

[46]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[47]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[48]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

the April 2, 2013, meeting with Patterson.  See MSJ ¶ 38, at 10 (asserting this fact)(citing Quiroz Depo. at 121:23-122:2); Response ¶ 38, at 9 (not disputing this fact).  It was Gates' job, however, and not Quiroz', to enter information into IMPACT.  See Response ¶ 38, at 9 (asserting this fact)(citing Quiroz Depo. at 120:1-13).[49]

The third incident occurred when a liquid condensation line cracked and released natural liquid gas, a dangerous and volatile liquid.  See MSJ ¶ 39, at 10 (asserting this fact)(citing Quiroz Depo. at 122:15-123:5; Bostic Memo at 2-5); Response ¶ 39, at 10 (not disputing this fact).  Josh Hill, a plant operator, discovered the leak and reported it to Price.  See Response ¶ 39, at 10 (asserting this fact)(citing Investigation Report Part 2, at 3).[50]  Brooks was notified and told Price not to submit the leaking pipe for testing, because it would lead to an investigation.  See Response ¶ 39, at 19 (asserting this fact)(citing Investigation Report Part 2 at 4).[51]  Quiroz learned of this incident "in a matter of days" after it happened.  MSJ ¶ 39, at 10 (asserting this fact)(citing Quiroz Depo. at 122:15-123:5; Bostic Memo at 2-5); Response ¶ 39, at 10 (not disputing this fact).  "Price told Quiroz that Brooks had instructed him not to report the [leak]."  MSJ ¶ 40, at 10 (asserting this fact)(citing Quiroz Depo. at 125:6-126:12); Response

[49]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[50]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[51]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

¶ 40, at 10 (not disputing this fact). Quiroz knew that the leak had not been properly reported when it occurred in September, 2012, but he did not report the leak until the April 2, 2013, meeting, because he was "relying on Brooks to follow reporting procedure, and was unsure whether Brooks was getting any direction from Maxey." MSJ ¶ 40, at 10 (asserting this fact)(citing Quiroz Depo. at 125:6-126:12). See Response ¶ 40, at 10 (not disputing this fact). The Investigation Report reflects that Quiroz had no involvement with the line-crack incident itself, because he was out of town when it occurred. See Response ¶ 39, at 10 (asserting this fact)(citing Investigation Report Part 2 at 3-5).[52]

The fourth incident involved a water spill from an injection well.[53] See MSJ ¶ 41, at 10 (asserting this fact)(citing Quiroz Depo. at 127:5-128:12; Bostic Memo at 2-5); Response ¶ 41, at 10-11 (not disputing this fact). Shortly after the spill, "Quiroz and Gates spoke with Brooks [and] Gates relayed his spill report calculations. Brooks advised that Gates needed to reduce the spill volume by half."[54] MSJ ¶ 41, at 10 (asserting this fact)(citing Quiroz Depo. at 127:5-128:12; Bostic Memo at 2-5). See Response ¶ 41, at 10-11 (not disputing this fact). Steve

---

[52]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[53]An injection well "is a device that places fluid deep underground into porous rock formations, such as sandstone or limestone, or into or below the shallow soil layer." "Injection Well," Wikipedia, https://en.wikipedia.org/wiki/Injection_well (last viewed January 17, 2018).

[54]The Court clarifies these events, which neither the MSJ nor the Response fully explain: Gates calculated the spill volume as approximately 1144 barrels, see Quiroz Depo. at 127:20-21, but Brooks told Gates to report only half of that spill volume, see Quiroz Depo. at 128:8-12. Gates thus reported an inaccurate spill volume of approximately 572 barrels, and Quiroz knew at the time that this report was inaccurate. See Quiroz Depo. at 131:2-9.

Stater, a Production Specialist, Kidd, and Ross all heard this conversation. See Response ¶ 41, at 10 (asserting this fact)(citing Bostic Memo at 3-4).[55] "Quiroz did not take any steps to correct the inaccuracy of the spill report until April 2, 2013, when he spoke to Patterson and Blair," because "'it was in [Brooks'] hands.'" MSJ ¶ 42, at 10 (asserting this fact)(alteration added)(quoting Quiroz Depo. at 131:2-17). See Response ¶ 42, at 11 (not disputing this fact). Quiroz added: "'That's the way we reported it up to the supervisor and it's his decision up to that point.'" Response ¶ 42, at 11 (asserting this fact)(quoting Quiroz Depo. at 131:13-17).[56] "Quiroz knew that Brooks did not want to accurately report the spill," and Quiroz did not report it "until after the fifth incident because he decided that five inaccurate reports were enough. Quiroz admitted that he let 'a few [incidents] slide by.'" MSJ ¶ 43, at 10-11 (asserting this fact)(alteration in MSJ)(quoting and citing Quiroz Depo. at 132:6-15). See Response ¶ 43, at 11 (not disputing this fact). Quiroz had "independent supervisory authority," and, after five incidents, he decided to step forward. MSJ ¶ 44, at 11 (asserting this fact)(citing Quiroz Depo. at 135:4-11; id. at 139:23-140:2). See Response ¶ 44, at 11 (admitting this fact).

About a month after the fourth incident, Maxey led a meeting where it became apparent that the water spill had been inaccurately reported. See Response ¶ 41, at 10 (asserting this

---

[55]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[56]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

fact)(citing Quiroz Depo. at 132:16-133:16).[57] The investigators knew about this meeting, and knew that the water spill was discussed, but they never pursued that information, even though a goal of the investigation was to discover whether employees knew that HSE incidents were unreported or under-reported. See Response ¶ 41, at 10-11 (asserting this fact)(citing Oral Deposition of Michael Balentine at 127:3-19 (taken November 4, 2015)("Balentine Depo."); Investigation Report at 5-6).[58] Balentine, one of the investigators, acknowledged that the meeting discussion was relevant to the investigation's goal. See Response ¶ 10, at 11 (asserting this fact)(citing Balentine Depo. at 128:1-16).[59] A person reading the Investigation Report could have asked the investigators to inquire whether Maxey knew that the water spill had been under-reported, but no one did. See Response ¶ 41, at 11 (asserting this fact)(citing Balentine Depo. 128:17-23).[60] Maxey knew about the water spill, because he attended the meeting, but he did not

---

[57]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[58]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[59]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[60]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

report it.  See Response ¶ 43, at 11 (asserting this fact)(citing Quiroz Depo. at 132:4-133:4).[61]

The fifth incident involves a valve cap that blew off of a compressor.  See MSJ ¶ 45, at 11 (asserting this fact)(citing Quiroz Depo. at 135:24-138:18; Bostic Memo at 2-5); Response ¶ 45, at 11 (not disputing this fact).  Price called Quiroz and informed him of the problem.  See MSJ ¶ 45, at 11 (asserting this fact)(citing Quiroz Depo. at 135:24-138:18; Bostic Memo at 2-5); Response ¶ 45, at 11 (not disputing this fact).  Quiroz told Price that he would inform Brooks, and Quiroz then called Brooks.  See MSJ ¶ 45, at 11 (asserting this fact)(citing Quiroz Depo. at 135:24-138:18; Bostic Memo at 2-5); Response ¶ 45, at 11 (not disputing this fact).  Brooks told Quiroz to inform Price that Brooks would discuss the matter with Price directly, because Quiroz was out of town.  See MSJ ¶ 45, at 11 (asserting this fact)(citing Quiroz Depo. at 135:24-138:18; Bostic Memo at 2-5); Response ¶ 45, at 11 (not disputing this fact).

It is unclear exactly what happened next, but at some point, Price gave instructions not to report the incident.  See Response ¶ 45, at 11 (asserting this fact)(citing Investigation Report Part 2 at 708).[62]  Brooks also called Gates and told Gates that the incident never happened.  See Response ¶ 45, at 11 (asserting this fact)(citing Investigation Report Part 2 at 708).[63]

---

[61]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[62]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[63]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ.

When Quiroz returned to work a few days later, he learned that the valve cap rupture "had not been properly reported, but he did not take any steps to properly report" it. MSJ ¶ 46, at 11 (asserting this fact)(citing Quiroz Depo. at 137:3-138:8). <u>See</u> Response ¶ 46, at 12 (not disputing this fact). Specifically, Quiroz learned that Brooks directed Gates not to report the incident. <u>See</u> Response ¶ 46, at 12 (asserting this fact)(citing Bostic Memo at 4).[64]

### 5. <u>The Investigation Report</u>.

The investigation determined that the five HSE incidents were not properly reported, thus violating ConocoPhillips' policy. <u>See</u> MSJ ¶ 47, at 11 (asserting this fact)(citing Investigation Report at 7-10; Investigation Report Part 2 at 1-10); Response ¶ 47, at 12 (not disputing this fact). "The investigation concluded that Brooks, Quiroz, Kidd, Price, and Gates knew or should have known that failing to properly report the incidents" violated ConocoPhillips' policy, and their actions jeopardized employees' health and safety. MSJ ¶ 48, at 11 (asserting this fact)(citing Investigation Report at 7-10; Investigation Report Part 2 at 1-10).[65] The

---

56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[64]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[65]Quiroz purports to dispute this fact, alleging that the Investigation Report states: "'It is fair to point out that there was no evidence that Quiroz, Kidd, Price or Gates acted with malice and based their decision to not report and investigate the incidents based on instructions they received directly or indirectly from Brooks.'" Response ¶ 48, at 12-13 (quoting Investigation Report at 9). The Investigation Report further states: "In every case, the actions of the employees were believed to have been done based on directives given to them by their respective supervisors, cascading upward through the chain of command to the supervisory position held by Tommy Brooks." Response ¶ 48, at 13 (quoting Investigation Report at 9). Stating that an employee knew or should have known something, however, is different from stating that an

Investigation Report also stated, however, that

> "it is fair to point out that there is no evidence that Quiroz, Kidd, Price, or Gates acted with malice and based their decision to not report and investigate the incidents based on instructions they received directly or indirectly from Brooks.
>
> . . . .
>
> In every case, the actions of the employees were believed to have been done based on directives given [to] them by their respective supervisors, cascading upward through the chain of command to the supervisory position held by Tommy Brooks."

Response ¶ 48, at 12-13 (asserting this fact)(quoting Investigation Report at 9).[66]  The

Investigation Report further states:

> Investigation determined that the five HSE-related incidents reported to the ethics office [ . . . ] occurred as alleged by the Report(s).  In addition, there was sufficient evidence to substantiate the allegation that the five incidents were not reported or were under-reported in violation of Company policy; in each instance, at the direction of the senior responsible person, Tommy Brooks.  Brooks instructed subordinate employees to conceal the occurrence of the incidents which subsequently contributed to the misconduct of some of the employees identified in this report; all of whom subsequently carried out Brooks' instructions.
>
> Through the uniform cooperation of employees interviewed, the investigation verified that employees carried out Brooks' instructions and did not report or under-reported incidents, even though it appeared evident that they objected to being instructed to do so.  Numerous details obtained and documented in their statements support this finding.  It was also clear that the safety of the working employees was put at risk by the lack of any post-incident investigation, and that

_____

employee acted with malice.  Further, that some employees did not report a problem, because their supervisor told them not to does not controvert the assertion that those employees knew or should have known that their inaction violated company policy.  The Court will therefore deem MSJ ¶ 48, at 11 undisputed.  See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[66]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

the compelling fact[s] support their statements of disagreeing with the decisions made to not report or under-report incidents by a person not put at risk in daily work situations.

Response ¶ 47, at 12 (asserting this fact)(citing Investigation Report at 7).[67]

Patterson played a role in Quiroz' termination.  See MSJ ¶ 49, at 11 (citing Patterson Depo. at 46:7-47:8).[68]  Patterson terminated, or recommended terminating, Quiroz, because Quiroz "failed to report incidents, covered up incidents, gave direction to destroy evidence and directed other employees to not report incidents."  MSJ ¶ 49, at 11 (citing Patterson Depo. at 46:7-47:8).  See Response ¶ 49, at 13 (not disputing this fact).  In terminating, or recommending to terminate, Quiroz, Patterson relied on the preliminary report, Quiroz' previous disciplinary actions, and discussions that Patterson had with the Chief Compliance Officer, the Legal Department, Patterson's supervisor, Human Resources, and the investigators.  See MSJ ¶ 50, at 12 (asserting this fact)(citing Patterson Depo. at 46:7-47:8; id. at 48:23-49:11; id. at 80:12-22; id. at 93:18-94:9); Response ¶ 50, at 13 (admitting this fact).  Patterson made his decision, in part, on the fact that Quiroz was a higher level supervisor and, according to Patterson, Quiroz was held to a higher level standard than his subordinates.  See MSJ ¶ 51, at 12 (asserting this fact)(citing Patterson Depo. at 56:16-57:2; id. at 67:2-68:19).  See Response ¶ 51, at 13 (not

_____

[67]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[68]The parties dispute who was involved in the decision to terminate Quiroz. ConocoPhillips alleges that Patterson "was the decision-maker regarding Quiroz' termination." MSJ ¶ 49, at 11 (citing Patterson Depo. at 46:7-47:8).  Quiroz alleges that the decision "was made collectively with the chief ethics officer, legal counsel, human resources, and the president of the lower 48 business unit of ConocoPhillips."  Response ¶ 49, at 13 (citing Patterson Depo. at 93:18-94:9).

disputing this fact).[69]  At ConocoPhillips, all employees are held accountable to report safety incidents.  See MSJ ¶ 52, at 12 (asserting this fact)(citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19); Response ¶ 52, at 13 (not disputing this fact).[70]

Quiroz, who is Hispanic, Brooks, who is African-American, Gates, who is Anglo, and Kidd, who is Anglo, were all terminated "for their roles in failing to properly report" the five incidents described above.  MSJ ¶ 53, at 12 (asserting this fact)(citing Quiroz Depo. at 191:13-18; Patterson Depo. at 49:12-20).  See Response ¶ 53, at 13 (admitting this fact).  Patterson terminated Kidd, because Kidd failed to cooperate in the investigation.  See MSJ ¶ 54, at 12 (asserting this fact)(citing Patterson Depo. at 90:15-91:21).  See Response ¶ 54, at 13 (not disputing this fact).  Patterson terminated Gates, because, as an HSE professional, Gates was expected to report HSE-related incidents to management even when Gates' managers instructed him otherwise.  See MSJ ¶ 54, at 12 (asserting this fact)(citing Patterson Depo. at 90:15-91:21); Response ¶ 54, at 13 (not disputing this fact).  The Investigation Report noted that Gates'

_____

[69]Quiroz purports to dispute this fact.  Quiroz quotes Patterson as saying that Quiroz "'had a higher standard than just as an operator,'" Response ¶ 51, at 13 (quoting Patterson Depo. at 56:16-22), and that "'we do hold our higher level managers and supervisors to a higher standard than we [do] our workers,'" Response ¶ 51, at 13 (alteration added)(citing Patterson Depo. at 67:9-23).  These statements do not contradict ConocoPhillips' assertion that, according to Patterson, Quiroz was held to a higher standard than his subordinates.  The Court will therefore deem MSJ ¶ 51, at 12 undisputed.  See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[70]The parties dispute the standard to which supervisors are held.  See MSJ ¶ 52, at 12 (citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19); Response ¶ 52, at 13 (citing Code of Conduct at 10).  According to ConocoPhillips, higher-level supervisors are held to a higher standard.  See MSJ ¶ 52, at 12 (citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19).  According to Quiroz, ConocoPhillips' policy does not distinguish between levels of supervisors.  See Response ¶ 52, at 13 (citing Code of Conduct at 10).

position as an HSE lead "'lacked the required independence and autonomy to be effective in managing the HSE activities of the organization.'" Response ¶ 54, at 13 (asserting this fact)(quoting Investigation Report Part 2 at 9).[71]

Price received a written warning, but was not terminated, because he had received directions regarding the various safety incidents from two different levels of management above him, Quiroz and Brooks. See MSJ ¶ 55, at 12 (asserting this fact)(citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19); Response ¶ 55, at 14 (not disputing this fact).[72] Quiroz also acted upon the instructions of his supervisor, Brooks. See Response ¶ 55, at 14 (asserting this fact)(citing Investigation Report at 9).[73]

On May 28, 2013, Maxey and Human Resources Representative Melissa McCarty informed Quiroz of his termination. See MSJ ¶ 56, at 12-13 (asserting this fact)(citing Quiroz Depo. at 144:2-146:20); Response ¶ 56, at 14 (admitting this fact). Maxey told Quiroz that he was terminated, because he had failed to properly report the five incidents described above. See

---

[71]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[72]The parties dispute the extent of Quiroz' duty to report the various HSE incidents in relation to Price's. According to ConocoPhillips, "Quiroz had a higher duty to report what occurred in the plant than Price did." MSJ ¶ 55, at 12 (citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19). Quiroz, however, "dispute[s] he had a higher duty to report than any other supervisor including Price." Response ¶ 55, at 14 (alteration added)(citing Code of Conduct at 10).

[73]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

MSJ ¶ 56, at 13 (asserting this fact)(citing Quiroz Depo. at 144:2-146:20); Response ¶ 56, at 14 (admitting this fact). Quiroz knew at the time he was terminated that Maxey did not make the decision to terminate him. See MSJ ¶ 57, at 13 (asserting this fact)(citing Quiroz Depo. at 146:2-16).[74] At the time this case commenced, Quiroz did not know who decided to terminate him, nor the decision-makers' races or national origins. See MSJ ¶ 57, at 13 (asserting this fact)(citing Quiroz Depo. at 146:2-16); Response ¶ 57, at 14 (not disputing this fact).

When Maxey and McCarty informed Quiroz of his termination, no one mentioned Quiroz' race or national origin, and neither Maxey nor McCarty said that Quiroz had been terminated because of his April 2, 2013 report to Patterson. See MSJ ¶ 58, at 13 (asserting this fact)(citing Quiroz Depo. at 146:21-147:5); Response ¶ 58, at 14 (admitting this fact). Instead, Maxey and McCarty told Quiroz that he was terminated, because he failed to properly report the various HSE-related incidents over the course of two years. See MSJ ¶ 58, at 13 (asserting this fact)(citing Quiroz Depo. at 146:21-147:5); Response ¶ 58, at 14 (admitting this fact). Quiroz did not make any reports to Human Resources about discrimination during or after his employment at ConocoPhillips. See MSJ ¶ 59, at 13 (asserting this fact)(citing Quiroz Depo. at 200:5-10); Response ¶ 59, at 14 (not disputing this fact).[75] Other employees were terminated as

---

[74]Quiroz purports to dispute this fact, alleging that "Quiroz did not know who was responsible for his termination." Response ¶ 57, at 14 (citing Quiroz Depo. at 145:21-146:15). The assertion that Quiroz does not know who terminated him is consistent with, and does not controvert, the assertion that Quiroz knew that Maxey did not terminate him. One can know who did not act without knowing who acted. The Court will therefore deem this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[75]The parties dispute whether Quiroz ever told Human Resources anything about retaliation against him. According to ConocoPhillips, "Quiroz did not make any reports to Human Resources about . . . retaliation during his employment or after he was terminated."

a result of the investigation, but Quiroz did not know why the others were terminated.  See MSJ ¶ 60, at 13 (asserting this fact)(citing Quiroz Depo. at 190:5-191:12); Response ¶ 60, at 14 (not disputing this fact).  Quiroz acknowledged that the reasons for terminating some employees, but not others, might vary based on the employee's responsibilities, level of knowledge, or level of cooperation.  See MSJ ¶ 60, at 13 (asserting this fact)(citing Quiroz Depo. at 190:5-191:12).[76]

---

MSJ ¶ 59, at 13 (citing Quiroz Depo. at 200:5-10).  According to Quiroz, "Quiroz told Maxey and Melissa McCarty, the Human Resources representative, that he believed his termination was retaliation."  Response ¶ 59, at 14 (citing Quiroz Depo. at 144:21-145:13).

[76]Quiroz purports to dispute this fact.  See Response ¶ 60, at 14 (citing Quiroz Depo. at 190:5-191:12).  The portion of the deposition that Quiroz cites, however, supports ConocoPhillips' assertion rather than controverting it.  The deposition reads in relevant part:

> Q: The reasoning behind each of those individuals may be different based on their particular responsibilities, right?
>
> A: Possibly, yes, sir.
>
> Q: May be different based on their level of knowledge, right?
>
> A: Maybe
>
> Q: May be different based on their level of cooperation during the investigation?
> A: Again, I wouldn't know any of that information.
>
> Q: Might be different based on how they were perceived as telling the truth during the investigation, right?
>
> A: I'm not sure. It could be.

Quiroz Depo. at 190:22-191:10. The Court will therefore deem this fact undisputed.  See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . .").

6.      **The Discrimination Allegations.**

Quiroz filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the New Mexico Department of Workforce Solutions, alleging national origin discrimination, race discrimination, and wrongful termination, because he reported the five HSE incidents to Patterson. See MSJ ¶ 61, at 13-14 (asserting this fact)(citing Quiroz Depo. at 151:7-152:2; Charge of Discrimination at 1 (dated November 6, 2013), filed November 16, 2015 (Doc. 36-19)); Response ¶ 61, at 14 (admitting this fact). Quiroz is Hispanic and his national origin is United States. See MSJ ¶ 62, at 14 (asserting this fact)(citing Quiroz Depo. at 153:12-154:1); Response ¶ 62, at 14 (admitting this fact). Quiroz believes that he was unlawfully terminated, and that Price and Larry Deen, another ConocoPhillips employee, should have been terminated, but Quiroz "does not know why they were not terminated and others were." MSJ ¶ 63, at 14 (asserting this fact)(citing Quiroz Depo. at 154:5-22). See Response ¶ 63, at 14 (admitting this fact).

In his Complaint, Quiroz alleges that Bostic, one of the investigators, "'failed to look at the role played by Maxey in non-reporting or under-reporting events including instances where Maxey had encouraged or tolerated previous instances on non-reporting or under-reporting.'" MSJ ¶ 64, at 14 (asserting this fact)(quoting Quiroz v. ConocoPhillips Company, No. CV-2014-00850 ¶ 17, at 7 (Fifth Judicial District Court, County of Lea, State of New Mexico), filed in federal court November 20, 2014 (D.N.M. Doc. 1-1)("Complaint"). See Response ¶ 64, at 14 (not disputing this fact). Bostic did not interview Maxey, however, because "'the allegations that were brought forward to us did not implicate [Maxey] in any wrongdoing.'" Response ¶ 64, at 14 (asserting this fact) (alteration added)(quoting Oral Deposition of John Bostic at 62:1-7 (taken

November 3, 2015)("Bostic Depo.").[77]

Quiroz further alleged that Gates and Kidd are not similarly situated to Quiroz. See MSJ ¶ 65, at 14 (asserting this fact)(citing Complaint ¶ 22, at 25); Response ¶ 65, at 15 (admitting this fact). Quiroz later testified that neither Gates nor Kidd "had the same level of supervision as he did, and admitted they both directly reported to Quiroz." MSJ ¶ 65, at 14 (asserting this fact)(citing Quiroz Depo. at 191:22-193:5). See Response ¶ 65, at 15 (admitting this fact). Quiroz further testified that he is not similarly situated to Gates and Kidd, because he, and not Gates or Kidd, is the employee who reported the HSE incidents to Patterson. See MSJ ¶ 66, at 14 (asserting this fact)(citing Quiroz Depo. at 192:24-193:11).[78] Quiroz also testified that Dobbs

---

[77]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[78]Quiroz purports to dispute this fact, by quoting the following portion of the Quiroz Deposition:

> Q: All right. Well, other ways that [Gates and Kidd] were not similarly situated to you is, neither one of them had the same level of supervision as you, right?
>
> A: That is correct.
>
> Q: They both reported to you; is that right?
>
> A: That is correct.

Response ¶ 66, at 15 (alteration added)(quoting Quiroz Depo. at 192:24-193:5). This exchange is not related, however, to ConocoPhillips' asserted fact that Quiroz testified that he is not similarly situated to Gates and Kidd, because he, and not Gates or Kidd, was the employee who reported the HSE incidents to Patterson. See MSJ ¶ 66, at 14 (asserting this fact)(citing Quiroz Depo. at 192:24-193:11). The Court will therefore deem this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

reported one of the HSE incidents before Quiroz did, but Dobbs was not terminated. See MSJ ¶ 66, at 14 (asserting this fact)(citing Quiroz Depo. at 143:19-144:12); Response ¶ 66, at 15 (not disputing this fact). Deen was also not terminated, even though he knew about the Philmex Battery fire and did not report it. See Response ¶ 66, at 15 (asserting this fact)(citing Quiroz Depo. at 193:6-21).[79]

"Quiroz does not know if anyone implicated Maxey during the investigation." MSJ ¶ 67, at 14 (asserting this fact)(citing Quiroz Depo. at 143:19-144:12). See Response ¶ 67, at 15 (not disputing this fact). Evidence was available to the investigators, however, that Maxey knew that the water spill was under-reported. See Response ¶ 67, at 15 (asserting this fact)(citing Balentine Depo. at 127:3-19).[80]

Quiroz believes that ConocoPhillips treated Deen and Price, who are of a different race and national origin than Quiroz, better than Quiroz. See MSJ ¶ 68, at 14 (asserting this fact)(citing Quiroz Depo. at 147:21-24). See Response ¶ 68, at 15 (admitting this fact). Quiroz does not know if Deen and Price knew about all five HSE incidents. See MSJ ¶ 68, at 14-15 (asserting this fact)(citing Quiroz Depo. at 147:21-24); Response ¶ 68, at 15 (admitting this fact). "Quiroz does not know whether any witnesses implicated Price or Deen during the investigation, or accused them of falsifying records, or instructing others not to follow the proper reporting

---

[79]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[80]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

procedures."  MSJ ¶ 69, at 15 (asserting this fact)(citing Quiroz Depo. at 149:23-151:6).  See Response ¶ 69 at 15-16 (not disputing this fact).

According to the Investigation Report, however, Price admitted to instructing others to alter company records, and he disposed of physical evidence.  See Response ¶ 69, at 15 (asserting this fact)(citing Investigation Report at 8-9).[81]

The Investigation Report also excludes any discussion of Deen, and does not mention that Deen had any knowledge of the Philmex Battery fire or Brooks' instructions not to report it.  See Response ¶ 69, at 15 (asserting this fact)(citing Investigation Report at 9-10).[82]

---

[81]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Quiroz also asserts that "Deen by his own admission knew about the Philmex Battery Fire, Deen admitted he never saw [a]n IMPACT notification, and he believed there should have been an IMPACT report and a report to the New Mexico Oil Conservation Division, Deen knew Brooks told Gates not to report the incident."  Response ¶ 69, at 15.  In support of these assertions, Quiroz cites "QUICOP 00334-00335, Exhibit 5."  Response ¶ 69, at 15.  The Court could not locate, however, the cited pages in the Response's Exhibit 5, nor anywhere else in the exhibits submitted with the Response.  Nevertheless, because ConocoPhillips does not dispute these asserted facts, the Court will consider them.

[82]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Quiroz also asserts, "additionally, only after he was interviewed did Deen produce pictures of the Philmex Battery, soil boring analytical data and a written statement prepared by Kyle Wright which Deen had in his possession."  Response ¶ 69, at 16.  Quiroz cites "QUICOP 00256, exhibit 5," which references Report of Investigation at 3, filed December 8, 2015 (Doc. 41-16), to support this assertion.  Response ¶ 69, at 16. The cited page does not, however, support this assertion, and in fact makes no mention of Deen.  See Report of Investigation at 3, filed December 8, 2015 (Doc. 41-16).  The Court will, nevertheless, consider this assertion, because ConocoPhillips does not dispute it.

"Quiroz did not tell the investigators during his interview that Deen and Price told employees not to follow proper reporting procedures or to falsify records." MSJ ¶ 70, at 15 (asserting this fact)(citing Quiroz Depo. at 150:17-151:6).[83]

Quiroz told the investigators, however, that Deen was present or was a witness to the Philmex Battery fire. See Response ¶ 70, at 16 (asserting this fact)(citing Bostic Memo at 2).[84] He also told the investigators, in regard to the line-crack incident, that logs were missing and that Brooks told Price not to report the incident. See Response ¶ 70, at 16 (asserting this fact)(citing Bostic Memo at 3).[85] Quiroz does not know why Ross, who is African-American, or Deen who

---

[83]Quiroz purports to dispute this fact, alleging that "Quiroz told the investigators Deen was present at the scene or was a witness to the Philmex Battery Fire." Response ¶ 70, at 16 (citing Bostic Memo at 2). Quiroz telling the investigators that Deen saw the Philmex Battery fire does not, however, controvert ConocoPhillips' assertion that Quiroz did not tell the investigators that "Deen . . . told employees not to follow proper reporting procedures or to falsify records." MSJ ¶ 70, at 15 (asserting this fact)(citing Quiroz Depo. at 150:17-151:6). Seeing a fire, and telling people not to report it or to lie about it, are two different things. The Court will therefore deem this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

Quiroz further purports to dispute this fact, alleging that he "told the investigators in regard to [the third incident] that logs were missing and that Brooks told Price not to report or document the incident." Response ¶ 70, at 16 (citing Bostic Memo at 3). Telling investigators that Brooks told Price not to report something is different, however, from telling investigators that Price told another employee not to report something. The Court will therefore deem this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[84]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[85]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

is Anglo, were not terminated.  <u>See</u> MSJ ¶ 71, at 15 (asserting this fact)(citing Quiroz Depo. at 116:2-19); Response ¶ 71, at 16 (admitting this fact).

Patterson was not presented with any evidence "that Deen instructed anyone to destroy evidence or not report incidents."  MSJ ¶ 72, at 15 (asserting this fact)(citing Patterson Depo. at 96:11-97:8).[86]  Patterson acknowledged that the Investigation Report indicated that Deen knew about unreported incidents, but Patterson did not know that when ConocoPhillips terminated Quiroz.  Response ¶ 72, at 16 (asserting this fact)(citing Patterson Depo. at 96:20-97:8).[87]

Quiroz testified that all five HSE incidents described in the Investigation Report should have been reported in IMPACT.  <u>See</u> MSJ ¶ 73, at 15 (asserting this fact)(citing Quiroz Depo. at 123:6-19); Response ¶ 73, at 16 (not disputing this fact).  It was Gates' job to report the HSE incidents into IMPACT.  <u>See</u> Response ¶ 73, at 16 (asserting this fact)(citing Quiroz Depo. at

―――――――――――――

[86]Quiroz purports to dispute this fact, alleging that "Patterson acknowledged the report indicated Deen was aware of unreported incidents, but that [Patterson] was not aware of that when they terminated Quiroz."  Response ¶ 72, at 16 (alteration added)(citing Patterson Depo. at 96:20-97:8).  Asserting that Patterson knew that Deen was aware of unreported incidents does not controvert ConocoPhillips' assertion that Patterson was not presented with any evidence "that Deen instructed anyone to destroy evidence or not report incidents."  MSJ ¶ 72, at 15 (asserting this fact)(citing Patterson Depo. at 96:11-97:8).  Patterson could have had evidence that Deen knew about unreported incidents, while not having evidence that Deen instructed a third party not to report incidents or to destroy evidence of those incidents.  Knowing that a problem exists is different from telling a third party to conceal it.  The Court will therefore deem this fact undisputed.  <u>See</u> D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted").

[87]ConocoPhillips does not address this factual allegation in its Reply.  The Court therefore deems this fact undisputed.  <u>See</u> Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

74:1-9).[88]

"Quiroz has no knowledge or evidence that Maxey directed Brooks to under-report or not report any of the HSE-related incidents, and Maxey never instructed Quiroz to not follow proper reporting procedure." MSJ ¶ 74, at 15 (citing Quiroz Depo. at 115:3-9; id. at 122:3-14; id. at 126:18-21; id. at 134:1-13; id. at 138:9-18).[89] Quiroz did know, however, about the meeting where Maxey learned that the water spill had been under-reported. See Response ¶ 74, at 16 (asserting this fact)(citing Quiroz Depo. at 94:16-95:20).[90]

"Patterson was not presented with any evidence or allegations that Maxey had prior knowledge of the incidents that were improperly reported." MSJ ¶ 75, at 15 (asserting this fact)(citing Patterson Depo. at 99:21-100:7). See Response ¶ 75, at 16 (not disputing this fact). Patterson did not know about the meeting where Maxey learned that the water spill was under-reported, and the Investigation Report does not mention the meeting. See Response ¶ 75, at 16

---

[88]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted").

[89]Quiroz purports to dispute this fact, alleging that Quiroz knew about a meeting where Maxey learned that the fourth incident had been under-reported. See Response ¶ 74, at 16 (citing Quiroz Depo. at 94:16-95:20). That Quiroz knew that Maxey learned that one incident was under-reported does not controvert the assertion that Quiroz has no knowledge or evidence that Maxey directed Brooks not to report an incident. That Maxey knew that a problem existed does not show that Maxey directed a third party to conceal it. The Court will therefore deem this fact undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

[90]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

(asserting this fact)(citing Patterson Depo. at 99:21-100:12).[91]

### 7. Quiroz' Additional Facts.

Quiroz asserts the following additional facts in his Response. See Response at 17-19. ConocoPhillips does not address these factual allegations in its Reply. The Court therefore deems these facts undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

Quiroz never told anyone to alter records. See Response ¶ 3, at 17 (asserting this fact)(citing Quiroz Depo. at 129:6-25). All of the incidents in question were reported to Brooks. See Response ¶ 4, at 17 (asserting this fact)(citing Quiroz Depo. at 131:13-132:5). Quiroz was told that he was fired for failing to report incidents, although he eventually came forward and reported them. See Response ¶ 5, at 17 (asserting this fact)(citing Quiroz Depo. at 144:21-145:20). Quiroz believes that Deen and Price were treated better than Quiroz because of race and national origin. See Response ¶ 6, at 17 (asserting this fact)(citing Quiroz Depo. at 147:24-148:5).[92] Quiroz told the truth to the investigators. See Response ¶ 7, at 17 (asserting this

---

[91]ConocoPhillips does not address this factual allegation in its Reply. The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.").

[92]Quiroz asserts that "Larry Deen and Keith Price were treated better than Quiroz because of race and national origin." Response ¶ 6, at 17. The cited support, the Quiroz Deposition at 147:24-148:5, only supports, however, the assertion that Quiroz believes that Deen and Price were treated better than Quiroz because of race and national origin. See Quiroz Depo. at 147:24-148:5. The Court will therefore consider this assertion only as a reflection of Quiroz' opinion and as the theory of his case, and not as a fact. See Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . . .").

fact)(citing Balentine Depo. at 93:3-7). Quiroz reported more information than the Philmex Battery fire, which ConocoPhillips might not have otherwise learned. See Response ¶ 8, at 17 (asserting this fact)(citing Balentine Depo. at 123:17-125:9). The five HSE incidents listed in the Investigation Report are those that Quiroz reported. See Response ¶ 9, at 18 (asserting this fact)(citing Balentine Depo. at 63:23-65:2). The investigation's scope never expanded beyond the five HSE incidents that Quiroz reported. See Response ¶ 10, at 18 (asserting this fact)(citing Balentine Depo. at 87:3-9).

John Coy, a supervisor on Quiroz' level who also reported to Brooks, told investigators that Brooks instructed him not to report the findings of an HSE field audit. See Response ¶ 11, at 18 (asserting this fact)(citing Balentine Depo. at 93:8-95:7). The investigators include this information in the Investigation Report, but no one told the investigators to follow-up on this information. See Response ¶ 11, at 18 (asserting this fact)(citing Balentine Depo. at 93:8-95:7). Another employee, Curtis Bales, told the investigators about an incident that occurred in 2012 which Brooks told him not to report. See Response ¶ 12, at 18 (asserting this fact)(citing Balentine Depo. at 96:8-101:15). Quiroz' last employment evaluation with ConocoPhillips was positive. See Response ¶ 13, at 18 (asserting this fact).[93]

**PROCEDURAL BACKGROUND**

Quiroz filed this lawsuit in state district court on October 6, 2014. See Complaint at 3. The Complaint asserts the following claims against ConocoPhillips: (i) unlawful racial and

---

[93]Quiroz asserts that his last employment evaluation with ConocoPhillips was positive. See Response ¶ 13, at 18. Quiroz cites "QUICOP 0065, Exhibit 5" in support of this assertion. Response ¶ 13, at 18. The Court could not locate the cited page in the Response's Exhibit 5. On the other hand, ConocoPhillips does not dispute this assertion. The Court will therefore consider this asserted fact.

national origin discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2, and the NMHRA, N.M. Stat. Ann. § 28-1-7(A); (ii) unlawful retaliation in violation of Title VII and the NMHRA; and (iii) wrongful termination-retaliatory discharge. See Complaint ¶¶ 23-36, at 26-29. ConocoPhillips subsequently removed the case to federal court on the basis of federal-question jurisdiction. See Notice of Removal of Civil Action at 2, filed November 20, 2014 (Doc. 1). ConocoPhillips moved for summary judgment on November 16, 2015. See MSJ at 1.

### 1. **The MSJ.**

ConocoPhillips first argues that Quiroz' national origin and racial discrimination claims fail as a matter of law. See MSJ at 16. Specifically, ConocoPhillips contends that Quiroz cannot establish a prima facie racial discrimination case, see MSJ at 17, because he violated ConocoPhillips' Code of Conduct by failing to properly report the five HSE incidents and instructed his subordinates not to follow proper reporting procedures, see MSJ at 18. According to ConocoPhillips, "Quiroz and three other supervisors/employees of different races were terminated for their roles in failing to properly report the five HSE-related incidents . . . . [A]ccordingly, Quiroz cannot establish . . . that he was performing up to ConocoPhillips' expectations and therefore his discrimination claims fail as a matter of law." MSJ at 19.

ConocoPhillips next avers that "Quiroz cannot establish that others outside his protected classes were treated more favorably than he was." MSJ at 19. Specifically, ConocoPhillips argues that its treatments of Maxey, Deen, and Price are not proper comparisons to Quiroz' treatment, see MSJ at 19, because "Quiroz acknowledged that he has no evidence that Price, Deen, or Maxey were actually implicated during the investigation." MSJ at 19-20. Further, according to ConocoPhillips, "Maxey, Deen and Price are not proper comparators because [Quiroz] is the only one out of those employees who actually made a report to Patterson on April

2, 2013." MSJ at 20 (alteration added).

Next, ConocoPhillips argues that Quiroz' Title VII retaliation claim fails as a matter of law, because "Quiroz did not engage in a protected activity." MSJ at 21. Specifically, ConocoPhillips contends that Quiroz' report to Patterson "is not related to any conduct that is proscribed by Title VII or the NMHRA and does not constitute a protected activity." MSJ at 22. ConocoPhillips continues that Quiroz has no evidence that his report to Patterson was the "but for" cause of his termination. MSJ at 22.

ConocoPhillips next avers that it had legitimate non-discriminatory and non-retaliatory reasons for terminating Quiroz, see MSJ at 23, and that Quiroz "has no evidence that Patterson or anyone involved in the decision to terminate him were not acting in good faith or that Patterson did not honestly believe that Quiroz had engaged in the conduct for which he was terminated." MSJ at 24. According to ConocoPhillips, "ConocoPhillips terminated Quiroz' employment because of numerous, egregious violations of its policies," which are legitimate non-discriminatory and non-retaliatory reasons for Quiroz' termination. MSJ at 25.

Finally, ConocoPhillips contends that Quiroz' wrongful termination claim also fails as a matter of law. See MSJ at 25. ConocoPhillips alleges that "Quiroz cannot demonstrate that he was terminated because he performed any act that New Mexico public policy has authorized or encouraged but rather he engaged in acts that demonstrate the opposite." MSJ at 26-27. For this reason, ConocoPhillips concludes that Quiroz' wrongful termination claim must fail. See MSJ at 27. ConocoPhillips concludes that the Court should grant its MSJ. See MSJ at 27.

### 2. __The Response__.

Quiroz responds to the MSJ. See Response at 1. Quiroz first argues that he has shown a prima facie case of racial discrimination. See Response at 22. He contends that he is Hispanic, a

member of a protected class, and that he suffered an adverse employment action, being terminated. See Response at 23. He then argues that, although he was terminated, some Anglo supervisors were not, even though they knew that some of the HSE-incidents were not reported. See Response at 23. Specifically, Quiroz contends that Maxey, Deen, Coy, and Price, who are all Anglo, and kept their jobs, were treated better than Quiroz. See Response at 23-24. Quiroz contends that these facts show an inference of discrimination. See Response at 26.

Quiroz next avers that ConocoPhillips' given reasons for terminating him are pretextual. See Response at 28. Quiroz contends that he was terminated before the Investigation Report was issued; that, in any event, the Investigation Report favors Anglo employees; and that the Investigation Report found no evidence that Quiroz acted with malice. See Response at 30. Quiroz concludes that ConocoPhillps' stated reasons for terminating Quiroz are pretextual. See Response at 30.

Finally, Quiroz contends that his wrongful termination claim should succeed. See Response at 31. He asserts that his act of reporting the five HSE incidents "is an act [that] public policy would favor and he was terminated as a result of those disclosures." Response at 31 (citing Gonzales v. City of Albuquerque, 849 F. Supp. 2d 1123, 1151 (D.N.M. 2011)(Browning, J.). Quiroz concludes that the Court should deny the MSJ. See Response at 32.

### 3. **The Reply**.

ConocoPhillips replied to the Response. See Reply at 1. ConocoPhillips first argues that Quiroz improperly relies on inadmissible evidence in the Response. See Reply at 2. According to ConocoPhillips, "[r]ather than opposing ConocoPhillips' Motion with specific facts that are supported by the record and admissible at trial as Rule 56 requires, Quiroz relies on speculative assumptions, inaccurate characterizations of testimony, [and] conclusory allegations." Reply at 3

(alteration added). ConocoPhillips contends that the Court cannot consider such "generalized and unsupported statements in opposition to ConocoPhillips' Motion." Reply at 3.

Turning to the merits, ConocoPhillips next contends that "Quiroz cannot establish a prima facie case of race discrimination." Reply at 3. To establish such a case, ConocoPhillips contends that Quiroz must show that he is a member of a protected class, was performing his job satisfactorily, and suffered an adverse employment action because of his race. See Reply at 4. ConocoPhillips concedes that Quiroz is Hispanic, a member of a protected class, but contends that Quiroz was not performing his job satisfactorily, because he did not timely report the five HSE incidents, thus violating ConocoPhillips' Code of Conduct. See Reply at 4. ConocoPhillips continues that Quiroz cannot establish "that others outside of his protected class were treated more favorably than he was." Reply at 5. According to ConocoPhillips, it is unfair to compare its treatments of Maxey, Deen, Coy, and Price, none of whom were terminated, to its treatment of Quiroz, because "the investigation did not reveal that they violated work rules of comparable seriousness and Quiroz does not provide any citations to the record establishing that they engaged in the same conduct as he did." Reply at 5. According to ConocoPhillips, the correct person with whom to compare Quiroz is Dobbs, because Dobbs engaged in the same conduct as Quiroz, namely, reporting the HSE incidents. See Reply at 6.

ConocoPhillips next argues that it has shown legitimate, non-discriminatory reasons for terminating Quiroz, and that Quiroz cannot establish that those reasons are pretext. See Reply at 8. Specifically, ConocoPhillips avers that Patterson terminated Quiroz, because Quiroz did not report the HSE incidents, concealed them, and directed other employees not to report them. See Reply at 8. Further, Patterson terminated Quiroz, ConocoPhillips contends, because Quiroz was a supervisor and held to a higher standard than his subordinates. See Reply at 9. ConocoPhillips

concludes that Quiroz cannot show that Patterson's reasons for terminating him were pretextual. See Reply 11.

Finally, ConocoPhillips briefly addresses Quiroz' retaliation and wrongful termination claims. See Reply at 11-12. ConocoPhillips argues that, "although Quiroz alleges a Title VII retaliation claim in his Complaint, he completely abandons this claim in his Response." Reply at 11. Regarding the wrongful termination claim, ConocoPhillips briefly contends that it fails as a matter of law, because Quiroz "engaged in conduct that jeopardized the safety and welfare of his co-workers and the public at large." Reply at 12. ConocoPhillips concludes that the Court should grant its MSJ. See Reply at 12-13.

### 4. **The Hearing.**

The Court held a hearing on September 26, 2016. See Draft Transcript of Motion Hearing (taken September 26, 2016)("Tr.").[94] ConocoPhillips first asserted that Quiroz cannot establish a prima facie case of race discrimination, because he cannot show that there is "evidence of circumstances giving rise to an inference of race discrimination." Tr. at 7:13-14 (Oller). The Court responded that "doesn't the mere fact that you've got five individuals basically all doing the same [thing] and you mete out different punishments" suggest an inference of race discrimination, even if ConocoPhillips can later show legitimate non-discriminatory reasons for its actions. Tr. at 9:12-14 (Court). ConocoPhillips replied that Quiroz had not made such an argument, see Tr. at 9:18-19 (Oller), but, rather, Quiroz had "chosen to try an[d] compare himself to people who weren't implicated in the report, and say . . . why weren't

---

[94]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

these people implicated." Tr. at 13:10-13 (Oller).

ConocoPhillips continued that, in any event, it had established legitimate non-discriminatory reasons for terminating Quiroz, because Patterson testified that he terminated Quiroz for failing "to report incidents that he knew had not been properly reported, covered up incidents when he shouldn't have, ordered evidence destroyed, and told other subordinate employees not to report evidence." Tr. at 15:18-21 (Oller). ConocoPhillips added that Patterson terminated Quiroz, but not Price, because Price received direction from both Quiroz and Brooks to cover up the HSE incidents. See Tr. at 17:17-21 (Oller).

Quiroz then took the podium. See Tr. at 22:3 (Newell). Quiroz began by conceding both his retaliation claim and his national origin discrimination claim. See Tr. at 22:5-14 (Newell, Court). Quiroz then argued that Coy and Deen were both similarly situated to Quiroz, but neither was terminated. See Tr. at 35:6-25 (Newell); id. at 36:1-3 (Newell). Quiroz argued that "those who didn't receive discipline show or at least provide enough information for us to meet our prima facie burden at the summary judgment stage that there were other reasons, discriminatory reasons, for the punishment that was imposed on Quiroz." Tr. at 36:7-12 (Newell).

The Court asked Quiroz "if I were to agree with [ConocoPhillips] on the Title VII [race] claim I'm assuming that you would want me to remand all the state-claim issues back to state court," Tr. at 47:24-25 (Court); id. at 48:1-3 (Court), to which Quiroz replied "yes," Tr. at 48:4 (Newell). Quiroz then pivoted to his last point, asserting that ConocoPhillips' ethics policies apply equally to Quiroz and Price, despite ConocoPhillips' argument that Quiroz was held to a higher standard than Price. See Tr. at 48:14-19 (Newell). Quiroz continued that, if he "is going to be held accountable for having knowledge of incidents that were not reported, then certainly

Mr. Price should, Mr. Deen should, and certainly someone should have looked into what Mr. Maxey knew." Tr. at 49:15-20 (Newell).

ConocoPhillips then responded to some of Quiroz' arguments. See Tr. at 50:20-23 (Oller). ConocoPhillips contended that Patterson "felt in his opinion that he would hold managers to a higher stand[ard], that's how he personally handled these issues." Tr. at 50:21-23 (Oller). ConocoPhillips continued that, regarding pretext, "Quiroz has to come forward with evidence that the reasons given for his termination were false, that they were not accurate reasons . . . . [T]he falsity is not there." Tr. at 52:11-15 (Oller). "Patterson reasonably believed, based on the other witnesses' testimony, that Mr. Quiroz ordered employees to falsify and destroy evidence." Tr. at 55:6-9 (Oller).

ConocoPhillips then emphasized that "all of the employees who [it] identified as culpable were fired, except for Mr. Price, who was the lowest level employee on the list." Tr. at 56:4-6 (Oller). ConocoPhillips continued that Patterson chose not to terminate Price, because both Quiroz and Brooks ordered Price to violate ConocoPhillips' policies. See Tr. at 56:6-11 (Oller). ConocoPhillips concluded that "[t]he evidence in the record just does not support that this investigation was biased towards . . . Hispanic employees." Tr. at 57:23-25 (Oller). At the hearing's conclusion, the Court gave its inclination that Quiroz had shown a prima facie case of Title VII race discrimination, but had not sufficiently rebutted ConocoPhillips' proffered legitimate non-discriminatory reasons for Quiroz' termination. See Tr. at 59:4-9 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the

initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting) (emphasis in original).[95]

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

---

[95]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law. See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.")(citation omitted). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, 2008 U.S. Dist. LEXIS 45838, at *1 (D. Kan. 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot decide credibility issues. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81. The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [574,] 586-87 [1986] . . . (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

> Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. at 380 (emphases in original). Applying these standards to a factual dispute over whether the plaintiff-respondent "was driving in such fashion as to endanger human life," the Supreme Court held that the plaintiff-respondent's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." 550 U.S. at 380. Thus, the Supreme Court concluded, "[t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by [a] videotape," which showed the plaintiff-respondent driving extremely dangerously. 550 U.S. at 381.

The United States Court of Appeals for the Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),][96] explained that the

---

[96]Rhoads v. Miller is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that

blatant contradictions of the record must be supported by more than other witnesses' testimony[.]" Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92. See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are

---

decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Rhoads v. Miller, Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008) (unpublished), Robinson v. Cavalry Portfolio Serv., LLC, 365 F. App'x 104 (10th Cir. 2010) (unpublished), and Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished) have persuasive value with respect to a material issue and will assist the Court in its preparation of this Memorandum Opinion.

genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing <u>Goddard v. Urrea</u>, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts"). <u>See</u> <u>American Mechanical Solutions, L.L.C. v. Northland Process Piping, Inc.</u>, 184 F. Supp. 3d 1030, 1078 (D.N.M. 2016)(Browning, J.)(granting summary judgment on a breach-of-the-implied-warranty-of-merchantability claim); <u>Payne v. Tri-State Careflight, LLC</u>, No. CIV 14-1044, 2016 WL 6396214, at *18 (D.N.M. 2016)(Browning, J.)(denying summary judgment because federal law did not preempt the Plaintiffs' claims in the field of wage and labor regulation for airline and railroad workers).

### LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3). The Court has noted that Title VII generally protects individuals from employers' improperly motivated adverse treatment in the workplace: "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." <u>Farley v. Leavitt</u>, No. CIV 05-1219, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted)(alterations omitted). With the 1972 amendments to the statute, Title VII's protections apply to federal and private employees. <u>See</u> <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)); <u>Walton v. New Mexico State Land</u>

Office, 113 F. Supp. 3d 1178, 1184 (D.N.M. 2015)(Browning, J.); Gerald v. Locksley, 785 F. Supp. 2d 1074, 1098 (D.N.M. 2011)(Browning, J.).

1.    **Disparate Treatment Discrimination.**

"To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, a plaintiff must show that [the] employer intentionally discriminated against [the plaintiff] for a reason prohibited by the statute." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1306 (10th Cir. 2005). Courts apply the burden-shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, which initially places the burden on the plaintiff to prove a prima facie case of discrimination. See, e.g., EEOC v. PVNF, LLC, 487 F.3d 790, 800-01 (10th Cir. 2007).

The elements that the Supreme Court established in McDonnell Douglas Corp. v. Green address only a refusal to rehire. Accordingly, the articulation of a plaintiff's prima facie case "varies depending on the type of adverse action the employee alleges was discriminatory." EEOC v. PVNF, LLC, 487 F.3d at 800 (citing Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005)). See 1 Lex K. Larson, Employment Discrimination § 8.08[1], at 8-103 (2d ed. 2012)("[C]ourts have applied the McDonnell Douglas prima facie case, sometimes modifying the proof requirements to fit the specific facts of the case, to cases involving promotion, discharge, demotion, discipline, layoffs, and other types of employer actions."). Generally, to prove a disparate-treatment discrimination claim at the summary judgment stage, "a prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." EEOC v. PVNF, LLC, 487 F.3d at 800. See Sorbo v. United Parcel Serv., 432 F.3d 1169, 1173 (10th Cir. 2005)(holding

that a "prima facie case for discrimination" requires the "plaintiff to show that (1) he belongs to the protected age group; (2) his job performance was satisfactory; (3) adverse employment action was taken against him; . . . [in (4)] 'circumstances giving rise to an inference of discrimination'" (quoting Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004))(citing Plotke v. White, 405 F.3d at 1101; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002))); Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000)).   A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that: (1) the plaintiff is a racial minority, (2) the plaintiff was disciplined by the employer, and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination.   Cf. Mathews v. Denver Newspaper Agency LLP, 649 F.3d 1199, 1208 (10th Cir. 2011)("[The plaintiff] bears the initial burden of . . . presenting evidence that (i) he is a member of a protected class, (ii) he was qualified for the job as Unit Supervisor, (iii) he was demoted from that job, and (iv) the position was not eliminated."  (citing Jones v. Denver Post Corp., 203 F.3d at 753)).[97]   See Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1188.

---

[97]The Court has previously written: "To establish a prima-facie case of discrimination, a plaintiff must demonstrate that: (i) she is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii) similarly situated employees were treated differently." Gerald v. Locksley, 785 F. Supp. 2d at 1099.  The Court cited to the Tenth Circuit's August, 2005, decision of Orr v. City of Albuquerque 417 F.3d 1149 (10th Cir. 2005), in which the Tenth Circuit stated: "To make out a prima facie case of discrimination, the female Plaintiffs must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."  Orr v. City Of Albuquerque, 417 F.3d 1140, 1149 (10th Cir. 2005).  Only a few months after Orr v. City Of Albuquerque, in December, 2005, the Tenth Circuit held that the district court's inclusion in the plaintiff's prima facie case of showing "comparable employees who were not in a protected class did not receive comparable adverse employment action" was the "recitation of an outmoded prima facie case test" and that showing disparate treatment of similarly situated individuals is only one way to

## 2. __Title VII Retaliation.__

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir. 2007)(quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452

---

prove the third McDonnell Douglas Corp. v. Green element. Sorbo v. United Parcel Serv., 432 F.3d at 1173. The Tenth Circuit recognized that the proper third element is -- and had been since at least 1999 -- the broader prima facie requirement that the defendant took the adverse employment action under "circumstances giving rise to an inference of discrimination." Sorbo v. United Parcel Serv., 432 F.3d at 1173 (citing Perry v. Woodward, 199 F.3d 1126, 1135-40 (1999); Salguero v. City of Clovis, 366 F.3d at 1175; Plotke v. White, 405 F.3d at 1101; Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d at 1181; Jones v. Denver Post Corp., 203 F.3d at 753). It noted that, "[w]hile this broader requirement may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case." 432 F.3d at 1173. At the same time, the Tenth Circuit noted that its precedent has been inconsistent on whether a prima facie discrimination case requires showing similarly situated individuals were treated more favorably: "As noted in Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005), this court's own jurisprudence has not been entirely consistent in this regard." Sorbo v. United Postal Serv., 432 F.3d at 1173 n.4 (citing, as an e.g. cite, MacKenzie v. City & Cnty. of Denver, 414 F.3d at 1277).

Similarly, in the context of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), which also applies the McDonnell Douglas Corp. v. Green prima facie case framework, the Supreme Court declared: "Because it lacks probative value, the fact that a[] . . . plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996). The Supreme Court held that "the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" 517 U.S. at 312-13 (emphasis in original)(quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). The Court, therefore, concludes that its articulation of the McDonnell Douglas Corp. v. Green prima facie case elements for discrimination in Gerald v. Locksley, based on the Tenth Circuit's decision in Orr v. City of Albuquerque, which was among the Tenth Circuit's jurisprudence "not . . . entirely consistent in this regard," Sorbo v. United Postal Serv., 432 F.3d at 1173 n.4, is not the best statement of the law.

F.3d at 1202). "To establish that a causal connection exists," a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)). Generally speaking, if this temporal proximity between the protected activity and the adverse action are not "very close in time," the plaintiff "must offer additional evidence to establish causation." Proctor v. United Parcel Serv., 502 F.3d at 1209 (internal quotation marks omitted)(quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1228). See Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1190; Gerald v. Locksley, 785 F. Supp. 2d at 1099-1100.

**3.      Materially Adverse Employment Action.**

The Tenth Circuit liberally defines what constitutes an adverse employment action. See Orr v. City of Albuquerque, 417 F.3d 1144, 1150 (10th Cir. 2005)("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action."). The Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks omitted)(citations omitted). See Proctor v. United Parcel Serv., 502 F.3d at 1208. An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)(internal quotation marks omitted) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). "We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'" Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004)). Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice." Annett v. Univ. of Kan., 371 F.3d at 1239 (internal quotation marks omitted)(citation omitted).

In Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008) (unpublished), the Tenth Circuit, in an unpublished opinion, addressed the requirement of an adverse employment action in the context of a disparate-treatment claim and a hostile work environment claim. There, an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment. Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999), the plaintiff, Anderson, argued that the growth plan and formal reprimand rose to the level of an adverse employment action under Tenth Circuit law. See Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999). In discussing Anderson v. Clovis Municipal School's reliance on Schuler v. City of Boulder, the Tenth Circuit stated in MacKenzie v. City & Cty. of Domier, 414 F.3d

1266 (10th Cir. 2005): "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." 414 F.3d at 1279. See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII proscribes only discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects [the employee's] status as an employee" (internal quotation marks omitted)). "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." Robinson v. Cavalry Portfolio Serv., LLC, 365 F. App'x 104, 114 (10th Cir. 2010)(unpublished)(quoting Haynes v. Level 3 Commc'ns, 456 F.3d at 1218-19)(internal quotation marks omitted). See Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1190-92; Gerald v. Locksley, 785 F. Supp. 2d at 1100-01.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

The federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32. Section 1367 additionally grants the federal courts power to hear claims over which the court otherwise lacks original jurisdiction, if those claims are part of the same constitutional case as

claims over which the court has original jurisdiction.  See 28 U.S.C. § 1367(a); Salazar v. San Juan County Detention Center, No. CIV 15-0417, 2017 WL 4620977, at *4 (D.N.M. 2017)(Browning, J.).

      **1.      Congressional Authority to Exercise Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines, pendent jurisdiction and ancillary jurisdiction; § 1367's passage codified those forms of jurisdiction, and additionally permitted courts to hear cases under pendent-party jurisdiction,[98] which the Supreme Court had previously disallowed in Finley v. United States, 490 U.S. 545 (1989).  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties, whose insertion into the litigation does not have the support of any independent grounds for federal jurisdiction, when those parties share a common interest

---

[98]Pendent-party jurisdiction occurs when "a plaintiff with a federal claim against one defendant appends a state law claim, arising from a common nucleus of facts, against *another defendant*, who could not otherwise be sued in a federal court."  Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer, & David L. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 867 (7th ed. 2015)(emphasis in original)("Hart and Wechsler").  Ancillary jurisdiction refers to supplemental jurisdiction in diversity cases.  See Hart and Wechsler at 1447.  Pendent jurisdiction refers to supplemental jurisdiction in federal question cases.  See Hart and Wechsler at 861.

in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the United States, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09–0540, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.).  In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).  See Salazar v. San Juan County Detention Center, 2017 WL 4620977, at **4-5.

## 2.    The District Courts' Discretion to Exercise Supplemental Jurisdiction.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the

supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction. The traditional analysis, based on the Supreme Court's opinion in <u>United Mine Workers v. Gibbs</u>, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726.

Similarly, the supplemental jurisdiction statute enumerates four factors that the court should consider:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ." <u>Estate of Harshman v. Jackson Hole Mountain Resort Corp.</u>, 379 F.3d at 1164. Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changes the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. <u>See</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered <u>Gibbs</u>' discretionary analysis."); <u>McLaurin v. Prater</u>, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); <u>Exec. Software N. Am. v. U.S. Dist. Ct.</u>, 24 F.3d

1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c) . . . ."); Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").

The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). This proclamation is consistent with the Supreme Court's statement that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726 (footnote omitted).

The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies. See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme

Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction."  Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(internal quotation marks omitted).  See Salazar v. San Juan County Detention Center, 2017 WL 4620977, at **5-6.

## ANALYSIS

The Court concludes that a genuine dispute of material fact exists regarding Quiroz' Title VII and NMHRA racial discrimination claims.  The Court will therefore not grant summary judgment on those claims.  The Court further concludes, however, that Quiroz' wrongful termination-retaliatory discharge claim fails, because Quiroz did not perform an act that public policy authorizes or encourages, and, thus, the Court will grant summary judgment on that claim.

**I.     A GENUINE DISPUTE OF MATERIAL FACT EXISTS REGARDING QUIROZ' DUTY TO REPORT AS A SUPERVISOR.**

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, 477 U.S. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, 477 U.S. at 249.  If that is the case, "summary judgment will not lie."  Anderson v. Liberty Lobby, 477 U.S. at 248.

Here, the parties genuinely dispute the extent of Quiroz' duty to report the various HSE incidents in relation to Price's. According to ConocoPhillips, "Quiroz had a higher duty to report what occurred in the plant than Price did." MSJ ¶ 55, at 12 (citing Code of Conduct at 10; Patterson Depo. at 67:2-68:19). The cited pages of the Patterson Deposition read, in key part:

> Q: And are you saying that under ConocoPhillips' policies, Quiroz had more of a duty to report what occurred in that plant than Price did?
>
> A: Yes
>
> . . . .
>
> A: Rudy Quiroz was a second-level supervisor. He would be held to be -- our expectations would be higher for him . . . than it would be for a first-level supervisor or a plant operator.

Patterson Depo. at 67:2-5; id. at 68:5-9.

Quiroz, however, "dispute[s] he had a higher duty to report than any other supervisor including Price." Response ¶ 55, at 14 (alteration added)(citing Code of Conduct at 10). The cited Code of Conduct page contains a heading stating "Leading Responsibly: Further Expectations for Supervisors," Code of Conduct at 10 (emphasis added), and then states: "Regardless of your position or level at ConocoPhillips, you should lead by example, demonstrate integrity and promote compliance with our Code . . . . If you are a supervisor, you must . . . promptly report through appropriate channels all information received concerning any potential violation of company policy, regulations or the law," Code of Conduct at 10 (emphasis added). In short, Patterson, the Vice President of ConocoPhillips' Mid Continent Business Unit, testified that ConocoPhillips' policy is that Quiroz had a higher duty to report a problem than Price, because Quiroz was a higher level supervisor than Price, Patterson Depo. at 67:2-5; id. at 68:5-9, but Quiroz points to ConocoPhillips' Code of Conduct, which suggests that all

supervisors, regardless of their level, have the same reporting obligations, <u>see</u> Code of Conduct at 10.  This factual dispute is genuine, because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248, and "there is a genuine issue for trial," <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 249.  A high-ranking ConocoPhillips executive, Patterson, says that company policy is A, but ConocoPhillips' company documents suggest that the policy is B.  A reasonable jury could decide either way.  This factual dispute is therefore genuine.

This factual dispute is also material.  The Supreme Court has explained: "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248.  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.  Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248.

In a Title VII racial discrimination claim, "[t]o establish a prima-facie case of discrimination, a plaintiff must demonstrate that: (i) she is a member of a protected class; [and] (ii) she suffered an adverse-employment action."  <u>Gerald v. Locksley</u>, 785 F. Supp. 2d at 1099.  The Tenth Circuit has recognized that the proper third element is -- and has been since at least 1999 -- the broader prima facie requirement that the defendant took the adverse employment action under "circumstances giving rise to an inference of discrimination."  <u>Sorbo v. United Parcel Serv.</u>, 432 F.3d at 1173 (citing <u>Perry v. Woodward</u>, 199 F.3d at 1135-40; <u>Salguero v. City of Clovis</u>, 366 F.3d at 1175; <u>Plotke v. White</u>, 405 F.3d at 1101; <u>Hysten v. Burlington N. & Santa</u>

Fe Ry. Co., 296 F.3d at 1181; Jones v. Denver Post Corp., 203 F.3d at 753). The factual dispute

is material to the prima facie case. There is no problem with the first two elements. Quiroz is

Hispanic, see MSJ ¶ 62, at 14 (asserting this fact)(citing Quiroz Depo. at 153:12-154:1);

Response ¶ 62, at 14 (admitting this fact), a member of a protected class, see E.E.O.C. v Flasher

Co., Inc., 986 F.3d 1312, 1319 (10th Cir. 1992)(explaining that Title VII makes it unlawful for

an employer to discriminate against any individual because of race). Further, Quiroz suffered an

adverse-employment action, being terminated, see MSJ ¶ 56, at 12-13 (asserting this fact)(citing

Quiroz Depo. at 144:2-146:20); Response ¶ 56, at 14 (admitting this fact), so the first two

elements are met. See Annett v. Univ. of Kansas, 371 F.3d at 1239 ("[A]n action that

significantly harms a plaintiff's future employment prospects may be considered an adverse

action."). The third element, "circumstances giving rise to an inference of discrimination,"

Sorbo v. United Parcel Serv., 432 F.3d at 1173, however, is entangled in the factual dispute. The

Tenth Circuit has explained that the third element may be satisfied "by proof that the employer

treated similarly situated employees more favorably." Sorbo v. United Parcel Serv., 432 F.3d at

1173. Quiroz, who is Hispanic, argues that he and Price, who is Anglo, were similarly situated,

but Price was not terminated, giving rise to an inference of discrimination. See Response at 24,

26. Although the investigation concluded that both Quiroz and Price "knew or should have

known that failing to properly report the incidents" violated ConocoPhillips' policy, and their

actions jeopardized employees' health and safety, MSJ ¶ 48, at 11 (asserting this fact)(citing

Investigation Report at 7-10; Investigation Report Part 2 at 1-10),[99] it remains unclear if Quiroz

_____

[99]Quiroz purports to dispute this fact, alleging that the Investigation Report states: "'It is fair to point out that there was no evidence that Quiroz, Kidd, Price or Gates acted with malice and based their decision to not report and investigate the incidents based on instructions they

and Price were similarly situated. If Patterson is correct that Quiroz had a higher duty to report than Price under ConocoPhillips' policy, see Patterson Depo. at 67:2-5; id. at 68:5-9, then Quiroz and Price may not be similarly situated. If the Code of Conduct accurately represents ConocoPhillips' policy, see Code of Conduct at 10, then Quiroz and Price might be similarly situated, giving rise to an inference of discrimination. The factual dispute therefore "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. at 248.

The factual dispute is also material to the next two steps of the Title VII racial discrimination claim. Once a plaintiff can show the prima facie case, "the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." Jaramillo v. Colorado Judicial Dept., 427 F.3d at 1307. If the employer can show legitimate non-discriminatory reasons, "[t]he burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." Jaramillo v. Colorado Judicial Dept., 427 F.3d at 1307. The factual dispute is material, because it may alter the legitimate non-discriminatory reasons and pretext analysis. Quiroz, who is Hispanic, contends that ConocoPhillips treated Price, who is Anglo, better than Quiroz. See MSJ ¶ 68, at 14 (asserting this fact)(citing Quiroz Depo. at 147:21-24); Response

_____

received directly or indirectly from Brooks.'" Response ¶ 48, at 12-13 (quoting Investigation Report at 9). The Investigation Report further states: "In every case, the actions of the employees were believed to have been done based on directives given to them by their respective supervisors, cascading upward through the chain of command to the supervisory position held by Tommy Brooks." Response ¶ 48, at 13 (quoting Investigation Report at 9). Stating that an employee knew or should have known something, however, is different from stating that an employee acted with malice. Further, that some employees did not report a problem, because their supervisor told them not to does not controvert the assertion that those employees knew or should have known that their inaction violated company policy. The Court will therefore deem MSJ ¶ 48, at 11 undisputed. See D.N.M.L.R.-Civ. 56.1(b)("All material facts set forth in the [Motion for Summary Judgment] will be deemed undisputed unless specifically controverted.").

¶ 68, at 15 (admitting this fact). According to Patterson, Quiroz had a greater duty to report problems under ConocoPhillips' policy than Price did. See Patterson Depo. at 67:2-5; id. at 68:5-9. If it is true that Quiroz had a greater duty, then this reason may be a legitimate non-discriminatory reason why ConocoPhillips terminated Quiroz but not Price. The Tenth Circuit has explained, however, that a plaintiff may typically show pretext in one of three ways:

> (1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

Salguero v. City of Clovis, 366 F.3d at 1176. If holding Quiroz to a higher duty to report than Price is not ConocoPhillips' real policy, as the Code of Conduct suggests, see Code of Conduct at 10, then such a fact could show that Quiroz "was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." Salguero v. City of Clovis, 366 F.3d at 1176. After all, the investigation concludes that both Quiroz and Price "knew or should have known that failing to properly report the incidents" violates ConocoPhillips' policy, and that their actions jeopardized employees' health and safety, MSJ ¶ 48, at 11 (asserting this fact)(citing Investigation Report at 7-10; Investigation Report Part 2 at 1-10). Further, the Code of Conduct's veracity could be "evidence that defendant's stated reason for the adverse employment action was false." Salguero v. City of Clovis, 366 F.3d at 1176. This factual dispute may therefore "affect the outcome of the suit under the governing law," so the Court will not grant summary judgment on Quiroz' Title VII racial discrimination claim. Anderson v. Liberty Lobby, 477 U.S. at 248.

For the same reasons, the Court will not grant summary judgment on Quiroz' claim for racial discrimination in violation of the NMHRA, N.M. Stat. Ann. § 28-1-7(A). "The NMHRA

sets out the same standard for establishing wrongful discrimination as Title VII." Walton v. New Mexico Land Office, 113 F. Supp. 3d at 1193 (citing Orr v. City of Albuquerque, 417 F.3d at 1149 n. 5 ("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII.")). "When considering a violation of the NMHRA the Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green." Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1193 (citing Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 127 P.3d 548, 551). The Court has explained that there may be two distinctions between Title VII and the NMHRA, but neither of them are applicable here. The first distinction is that the NMHRA allows for personal liability, see Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1193, but that is irrelevant here, because the only defendant in this case is ConocoPhillips. The second distinction involves the difference between the words "serious medical condition" in the NMHRA, N.M. Stat. Ann. § 28-1-7, and the term "disability" in the Americans with Disabilities Act, 42 U.S.C. §§ 12201-13, which is also irrelevant here. See Walton v. New Mexico State Land Office, 113 F. Supp. 3d at 1194. In short, because there is no relevant legal distinction between Quiroz' Title VII and NMHRA claims, the Court concludes that it should not grant summary judgment on Quiroz' NMHRA claim for the same reasons that it should not grant summary judgment on the Title VII claim.

## II. QUIROZ' WRONGFUL TERMINATION-RETALIATORY DISCHARGE CLAIM FAILS, BECAUSE QUIROZ DID NOT PERFORM AN ACT THAT PUBLIC POLICY AUTHORIZES OR ENCOURAGES.

The Court concludes that Quiroz' wrongful termination-retaliatory discharge claim fails, because he did not perform an act that public policy authorizes or encourages. For an employee to recover under this tort, "'he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something

required of him by his employer that public policy would condemn.'" Shovelin v. Central New Mexico Elec. Co-op., Inc., 1993-NMSC-015, ¶ 24, 850 P.2d 996, 1006 (quoting Chavez v. Manville Products Corp., 1989-NMSC-050, ¶ 16, 777 P.2d 371, 647). "Whether an employee has stated a sufficient public policy to recover for the tort of retaliatory discharge is determined on a case-by-case basis." Shovelin v. Central New Mexico Elec. Co-op., Inc., 1993-NMSC-015, ¶ 26, 850 P.2d at 1007.

Quiroz argues that his act of reporting the five HSE incidents is an act that public policy would encourage, and he was terminated as a result of these disclosures. See Response at 41. That statement is not the whole story. The investigation concludes that Quiroz "knew or should have known that failing to properly report the incidents" violated ConocoPhillips' policy, and that his actions jeopardized employees' health and safety. MSJ ¶ 48, at 11 (asserting this fact)(citing Investigation Report at 7-10; Investigation Report Part 2 at 1-10). Patterson terminated, or recommended terminating, Quiroz, because Quiroz "failed to report incidents, covered up incidents, gave direction to destroy evidence and directed other employees to not report incidents." MSJ ¶ 49, at 11 (citing Patterson Depo. at 46:7-47:8). See Response ¶ 49, at 13 (not disputing this fact). Quiroz even told Price not to report the second incident -- the plant compressor fire. See MSJ ¶ 34, at 9 (asserting this fact)(citing Quiroz Depo. at 117:16-118:7; Bostic Memo at 2-5); Response ¶ 34, at 9 (admitting this fact). It was only after Quiroz repeatedly violated company policy, and after Dobbs reported the Philmex Battery Fire, that Quiroz decided to report all of the HSE incidents to Patterson. See MSJ ¶ 19, at 6 (asserting this fact)(citing Quiroz Depo. at 97:5-100:9; id. at 105:14-106:6; id. at 110:1-10; Patterson Depo. at 21:11-15); Response ¶ 19, at 5 (admitting this fact). The Court cannot soundly conclude that failing to report fires, violating company policy, endangering employees, covering up incidents,

giving direction to destroy evidence, and only reporting the known problems after doing all of these things, is "an act that public policy has authorized or would encourage." Shovelin v. Central New Mexico Elec. Co-op., Inc., 1993-NMSC-015, ¶ 24, 850 P.2d at 1006. See Paca v. K-Mart Corp., 1989-NMSC-034, ¶¶ 3-10, 775 P.2d 245, 246-47 (discharge for violation of company policy did not violate public policy); Francis v. Memorial Gen. Hosp., 1986-NMSC-072, ¶¶ 18-21, 726 P.2d 852, 855 (nurse discharged for refusing to follow employer's policy did not state claim for retaliatory discharge). Surely, public policy encourages immediately reporting fires, not hiding them and reporting them long after the fact. The Court therefore concludes that Quiroz' wrongful termination-retaliatory discharge claim fails as a matter of law.

**IT IS ORDERED** that the Defendant ConocoPhillips Company's Motion for Summary Judgment, filed November 16, 2015 (Doc. 36), is granted in part and denied in part. The Court grants summary judgment on Plaintiff Rudy Quiroz' wrongful termination-retaliatory discharge, national origin discrimination, and retaliation claims. The Court denies summary judgment on Quiroz' claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, and the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7(A), for racial discrimination.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael Newell
Newell Law Firm, LLC
Lovington, New Mexico

    *Attorney for the Plaintiff*

Robert J. Sutphin
John C. Anderson
Holland & Hart, LLP
Santa Fe, New Mexico

--and--

Robert Shawn Oller
Christie L. Kriegsfeld
Littler Mendelson, P.C.
Phoenix, Arizona

    *Attorneys for the Defendant*